# Richmond.

## CHARLIE SPRATLEY V. COMMONWEALTH.

March 20, 1930.

Absent, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Harry A. Brinkley,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

EPES, J., delivered the opinion of the court.

The plaintiff in error (Charlie Spratley) was jointly indicted with Clarence Stancil and Willie Stancil for violation of the prohibition law. The first count of the indictment was the so called omnibus count. The second count charged that Clarence Stancil, Willie Stancil and Charlie Spratley did on July 6, 1928, unlawfully and feloniously transport ardent spirits in an

automobile, said Clarence Stancil, Willie Stancil and Charlie Spratley having therein at the time a loaded pistol. The third count charged all three men with the unlawful possession of ardent spirits on July 6, 1928. The defendants all pleaded not guilty and were tried jointly. The jury found the following verdict: "We, the jury, find the defendants guilty as charged in the indictment and fix their punishment as follows: Clarence Stancil three years in penitentiary, Charley Spratley and Willie Stancil each two years in the penitentiary." The defendants moved the court to set aside the verdict as contrary to the law and evidence, which motion the court overruled and entered judgment on the verdict against all three defendants.

All three defendants filed their petition for a writ of error, assigning as error that the evidence is not sufficient to support a verdict of guilty against Charlie Spratley and Clarence Stancil. This court refused to grant a writ of error to Willie Stancil and Clarence Stancil, but granted a writ of error and supersedeas to Charlie Spratley.

The only witness for the Commonwealth was Leroy Saunders, the police officer who arrested the defendants. The only witnesses for the defense were the three defendants.

Leroy Saunders testified that between one and two o'clock in the morning he observed a car coming down County street in the city of Portsmouth, and becoming suspicious he ordered the occupants of the car to drive to the side of the street and stop, which they did; that upon investigation he found that the car was a Dodge touring car which was occupied by Clarence Stancil, Willie Stancil and Charlie Spratley; that Clarence Stancil occupied the front seat and was operating the car; that Willie Stancil and Charlie

Spratley were on the back seat; that on the floor in front of Willie Stancil and Charlie Spratley were three five-gallon flasks of whiskey in two bags; that on the back seat with them were a gallon jug and a one-half gallon jug of whiskey, both in paper bags, and two pint bottles, both unwrapped and uncovered, one full and one half full of whiskey; that he took from the front seat beside Clarence Stancil a loaded revolver and from somewhere in the car a belt containing cartridges; that he arrested the three occupants of the car, at which time Clarence Stancil told him that the whiskey, the car and the gun were all his (Clarence Stancil's) property, but that at the trial in the police court Willie Stancil testified that the whiskey belonged to him (Willie Stancil) and that the others had nothing to do with it. Whether the jugs and bottles on the back seat were so placed as to be next to Charlie Spratley or were so placed that Willie Stancil was seated between them and Charlie Spratley does not appear from the testimony of this or any other witness; nor does this witness testify as to where in the automobile he found the cartridge belt; but Clarence Stancil says it was in the pocket of the car.

Clarence Stancil testified that he had that day driven his car to his father's home near Churchland, and finding that a dance was to be given near by, he left his car and walked to the dance hall and attended the dance; that when he returned his brother, Willie Stancil, told him that he had used the car and had put some vegetables in the back of the car; that he knew nothing of the packages, which were in burlap bags, except what his brother had told him, and did not know that it was intoxicating liquor; that he got in the front seat and his brother Willie in the back seat and started home; that when they got to a place on the road be-

tween Churchland and Portsmouth known as "The Three Corners" they met Charlie Spratley who asked them to give him a lift to Portsmouth, which they did; and that Charlie Spratley knew nothing of what was in the car, as far as he knew. He also testified that the pistol which was lying on the seat beside him and the cartridge belt which was in the pocket of the car he had taken that day as security for a debt due him and was simply carrying it to town to keep.

Willie Stancil testified that he had bought the whiskey and had put it in his brother's car while he was gone, and that he told Clarence Stancil that the bags contained vegetables; that Clarence Stancil owned none of the whiskey and knew nothing of the contents of these bags and had nothing to do with the whiskey; that he, Willie Stancil, had no knowledge of the pistol in the car; that they picked up Charlie Spratley at "The Three Corners" on the road between Churchland and Portsmouth when he asked for a lift; and that Charlie Spratley had no knowledge of the whiskey in the car and had nothing to do with it.

Charlie Spratley testified that he had gone to "Three Corners" to visit friends and was getting ready to wait for the bus which came by there when he saw this car with the Stancils in it, which he hailed and asked for a lift; that he was taken in and saw the bags but did not know that there was whiskey in them and knew nothing of their contents until they were all arrested; that he had no interest in the whiskey and would not have ridden in the car if he had known there was whiskey in it; and that he did not know of or see the pistol until they were arrested.

This is all the evidence in the case. It is plainly insufficent to sustain a verdict of guilty as to Charlie Spratley.

■ The mere presence of a person at a place where a crime is committed, even though he know that it is being committed, is not a crime, nor alone sufficient to establish his participation in the crime nor to constitute him an aider or abettor of the crime. 1 Bish. New Cr. Law (9th ed.) sections 632 and 633; 1 Wharton Cr. Law (11th ed.) sections 246 and 249; 16 C. J. (Criminal Law), sections 120 and 121 and cases there cited; *Rasnake* v. *Commonwealth*, 135 Va. 677, 115 S. E. 543; *Kemp* v. *Commonwealth*, 80 Va. 443, at page 450; *Wooden* v. *Commonwealth*, 177 Va. 930, 86 S. E. 305, Ann. Cas. 1917D, 1032 *Reynolds* v. *Commonwealth*, 33 Gratt. (74 Va.) 834; *Carey* v. *State*, 194 Ind. 626, 144 N. E. 22; *Reese* v. *State*, 157 Ga. 766, 122 S. E. 195; *Richardson* v. *State*, 89 Tex. Cr. R. 17, 228 S. W. 1094.

■ Except in so far as modified by statute, the rules of law and evidence are the same in prosecutions for violation of statutes prohibiting the manufacture, possession, transportation, or sale of intoxicating liquors as in prosecutions for other crimes.

■ The mere presence of a person in an automobile in which intoxicating liquor is being transported, with or without his knowledge, which is not shown to be owned by him or under his possession or control, single or joint, is not a crime; nor is it made by the statutes of Virginia *prima facie* evidence of his transportation of or aiding or abetting the transportation of the intoxicating liquor in the automobile; nor is it alone sufficient to sustain a conviction of him upon a charge of transporting intoxicating liquor. *Howard* v. *Commonwealth*, 138 Va. 835, 122 S. E. 112; *Woytek* v. *State*, 190 Tex. Cr. R. 122, 272 S. W. 131; *Murray* v. *State*, 19 Ariz. 49, 165 Pac. 315; *Stafford* v. *U. S.* (C. C. A. Ky.) 300 Fed. 537; *Howard* v. *State*, 193 Ind.

599, 141 N. E. 341; *Richardson* v. *State*, 89 Tex. Cr. R. 17, 228 S. W. 1094; *Walling* v. *State*, 94 Tex. Cr. R. 147, 250 S. W. 167.

■ To support his conviction on a charge of transporting intoxicating liquor, or aiding or abetting the transportation, there must be something more. There must be direct evidence of his single or joint ownership, possession or control thereof, or of his participation in or aiding or abetting the transportation thereof; or the facts and circumstances proven surrounding his presence in the automobile with the intoxicating liquor, or other facts and circumstances proven, must be such that from them it may be reasonably and naturally inferred with a certainty beyond a reasonable doubt that he was in the single or joint ownership, possession or control of the intoxicating liquor, or that he was participating in or aiding or abetting the transportation thereof; and the resultant of the several facts and circumstances proved must not only be consistent with his guilt, but must be inconsistent with and exclude every reasonable hypothesis of his innocence. *Hairston* v. *Commonwealth*, 97 Va. 759, 32 S. E. 797; *Davis* v. *Commonwealth*, 99 Va. 838, 38 S. E. 191; *Canter* v. *Commonwealth*, 123 Va. 794, 96 S. E. 284; *Cox* v. *Commonwealth*, 140 Va. 513, 125 S. E. 139; *Massie* v. *Commonwealth*, 140 Va. 557, 125 S. E. 146.

■ The Commonwealth's own testimony makes it impossible to draw from the presence and position of Charlie Spratley in the automobile in which the whiskey was found an inference certain beyond a reasonable doubt that he had the single or joint ownership, possession, or control of the whiskey; for it clearly points to the exclusive ownership, possession and control thereof being in Clarence Stancil and/or Willie Stancil. This being true there is nothing in the Commonwealth's

evidence to show that he was participating in, aiding, or abetting the transportation of the whiskey other than his mere presence in an automobile owned and driven by another in which there was a large quantity of whiskey, under conditions from which, in the absence of any explanation, it might be inferred that he had knowledge that there was whiskey therein. This alone is not sufficient to sustain a conviction. Something more must appear. It may be that only slightly more evidence may in some cases warrant an inference of participation in, or aiding or abetting transportation certain beyond a reasonable doubt, but it is not to be found here.

But even if the testimony of the Commonwealth standing alone be deemed sufficient to sustain a conviction, any inference that might be drawn from the evidence of the Commonwealth that Charlie Spratley had the ownership, possession or control, singly or jointly, of the whiskey in the automobile, or that he was participating in or aiding or abetting the transportation thereof, is rebutted by the testimony for the defense.

The uncontradicted testimony of Charlie Spratley, whose veracity is not impeached, is that he was a mere passenger in the automobile who had hailed Clarence and Willie Stancil on the road and asked for and was being given a ride into Portsmouth; that he had nothing to do with the whiskey and did not know of its presence in the automobile until he was arrested. This testimony is fully corroborated by the testimony of both Willie and Clarence Stancil at the trial, and is consistent with the statement made by Clarence Stancil to the officer who made the arrest at the time of the arrest. It is not contradicted by any witness who testified. It is not in and of itself, or in the light of

the other evidence, unreasonable or improbable. It is not in conflict with any of the evidence for the Commonwealth or any other evidence of the defendants; and is not inconsistent with any fact or circumstance to which any other witness testifies.

█ The contention of the Commonwealth that the testimony of Charlie Spratley that he did not know there was whiskey in the automobile until he was arrested is inconsistent with the testimony of the Commonwealth and so improbable as to discredit his whole testimony, is not well made.

His testimony and that of Willie and Clarence Stancil show that he got into the automobile in the nighttime, when it is dark; that all the whiskey had been placed in the automobile before he got into it, and at a distance from where he hailed the automobile and was permitted to get in. The testimony of the witness for the Commonwealth is that all three five-gallon flasks on the floor and the gallon jug and half gallon jug on the back seat were in bags and thus concealed from view; and there is nothing to show that either the jugs or the two pint bottles on the rear seat were so placed as to be next to Charlie Spratley or where in the dark he probably would have come to know of their presence. There is no evidence to show that Charlie Spratley had been drinking, from which it might be inferred that he had consumed any of the whiskey in the pint bottle which was half full, or that he had any prior acquaintance, association or connection with either Clarence or Willie Stancil from which any inference might be drawn that he had any knowledge or suspicion when he hailed this automobile as to who was in it or that the occupants thereof had whiskey in it. Nor is there any evidence that Charlie Spratley said or did anything which disclosed a sense of guilt or knowledge of the presence of the whiskey.

It may well be inferred from the evidence that Willie Stancil and Clarence Stancil, in an effort to protect each other, have not told the truth as to their several relationships to this whiskey as between themselves, and the interest or motive which might prompt them to do so is apparent. But even if this be so, it at most lessens the value of their corroboration of the testimony of Charlie Spratley.

While the jury is the judge of both the weight of the testimony and the credibility of witnesses, it may not arbitrarily or without any justification therefor give no weight to material evidence, which is uncontradicted and is not inconsistent with any other evidence in the case, or refuse to credit the uncontradicted testimony of a witness, even though he be the accused, whose credibility has not been impeached, and whose testimony is not either in and of itself, or when viewed in the light of all the other evidence in the case, unreasonable or improbable, and is not inconsistent with any fact or circumstance to which there is testimony or of which there is evidence. There must be something to justify the jury in not crediting and in disregarding the testimony of the accused other than the mere fact that he is the accused, or one of them. *Messer* v. *Commonwealth*, 145 Va. 838, 133 S. E. 761; *Ramey* v. *Commonwealth*, 136 Va. 769, 117 S. E. 833; *Cox* v. *Commonwealth*, 140 Va. 513, 125 S. E. 139; *Triplett* v. *Commonwealth*, 141 Va. 578, 127 S. E. 486; *People* v. *Willie Wong*, 321 Ill. 181, 151 N. E. 485; *People* v. *Todd*, 301 Ill. 85, 133 N. E. 645; *Russell* v. *State*, 91 Fla. 370, 107 So. 922; *Clements* v. *State*, 19 Ala. App. 640, 99 So. 832; *Ammons* v. *State*, 20 Ala. App. 283, 101 So. 511; *Denham* v. *Commonwealth*, 206 Ky. 746, 268 S. W. 545; *McLeod* v. *State*, 140 Miss. 897,

105 So. 757; *State* v. *Lutz*, 85 W. Va. 330, 101 S. E. 434; *State* v. *Galford*, 87 W. Va. 358, 105 S. E. 237; *State* v. *Hurst*, 93 W. Va. 222, 116 S. E. 248.

The judgment of the court against Charlie Spratley will be reversed, the verdict of the jury in so far as it finds Charlie Spratley guilty will be set aside, and a new trial granted him.

*Reversed and remanded for new trial.*