ELWOOD H. GILBERT

V.

CHARLOTTE K. SUMMERS

Record No. 891276

June 8, 1990

Present: All the Justices

*Bonnie L. Paul; Colleen Quinn Rust (Litten, Sipe & Miller*, on briefs), for appellant.
*David A. Penrod (Hoover, Hoover, Penrod & Davenport*, on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

This appeal involves a boundary dispute between Elwood Gilbert and Charlotte Summers, owners of contiguous property in Rockingham County. Gilbert filed a motion for judgment against Summers to establish by deed or adverse possession his ownership of the disputed land, approximately 15.1 acres of mountainous property. He requested that the court determine boundary lines and award him $17,000 in damages allegedly caused by Summers' interference with his timber business. Summers denied Gilbert's claims of ownership and filed a counterclaim to recover damages, alleging that Gilbert had removed timber from the disputed property. This action was tried before a jury which established the property boundaries in favor of Summers.

In 1876, Abram Miller, predecessor in title to both Gilbert and Summers, acquired 183 acres of land (the Miller tract). The deed

which conveyed the land to Miller contains a metes and bounds description with natural landmarks. Abram and Hannah Miller transferred a parcel of the tract to Jesse Shoemaker (the Shoemaker tract) by deed dated January 30, 1905 (the 1905 deed). The 1905 deed, containing numerous grammatical errors, conveyed the following property:

> [A]ll that certain tract or parcel of land lying in Linville District in Rockingham County, Virginia, situate on Shoemaker river, adjoining the lands of Jesse Shoemaker, L. A. Kirkpatrick and others and bounded and described as follows to wit beginning 15 poles from Jesse Shoemaker's corner near the creek at the road, thence, S.E. to 3 white oaks Miller & Lambs corner, thence up the mountain far enough to strike a chestnut oak in Miller & Shoemakers line at a right angle with said line thence down the mountain with the same to a white oak corner to Miller & Shoemaker thence with their line within 15 poles of Shoemaker's corner, thence across to the beginning containing thirty-two (32) acres. . . .

In 1906, Jesse and Martha Shoemaker conveyed their parcel by deed to Mary C. Kirkpatrick, Summers' grandmother. The 1906 deed has a different metes and bounds description which states that the tract consists of 32 acres.[1] Ownership of the tract has remained in the Kirkpatrick family. The deeds transferring the property since 1906 contain metes and bounds descriptions nearly identical to the description in the 1906 deed.

The threshold issue we consider on this appeal is whether the 1905 deed was ambiguous. Gilbert filed a motion *in limine* to exclude from evidence any deed in Summers' chain of title subsequent to the 1905 deed. The trial court conducted an *ore tenus* pre-trial hearing during which it considered testimony of two surveyors, and entered an order which stated that an ambiguity exists in the calls in the deed, "thence up the mountain far enough to strike a chestnut oak in Miller & Shoemakers line at a right angle with said line thence down the mountain with the same to a white oak corner to Miller & Shoemaker thence with their line within 15 poles of Shoemaker's corner." Gilbert filed a motion for reconsideration. In a letter opinion the court concluded that although

---

[1] Gilbert contends that the 1905 deed conveyed 12.2 acres of land to Shoemaker. Summers argues that the deed conveyed approximately 33 acres.

an ambiguity existed in the aforementioned calls, the 1906 deed was inadmissible to the extent it altered, varied, or contradicted the unambiguous portions of the 1905 deed.

During the trial, the court ruled that a diagram of Summers' chain of title was admissible, but that the underlying deeds after 1905 were inadmissible unless an ambiguity in the 1905 deed was shown by the evidence. George Foard, Gilbert's surveyor and expert witness, testified that the location of the right angle described in the 1905 deed was dependent upon the location of a chestnut oak tree which no longer exists. The trial court decided that this factor created an ambiguity in the 1905 deed and admitted the 1906 deed and subsequent deeds in Summers' chain of title to resolve the purported ambiguity. Gilbert objected to the admission of this evidence on the basis that the 1905 deed was not ambiguous and that, even if it was ambiguous, the 1906 deed was inadmissible because it contradicted the earlier deed. Gilbert further argued that admission of any deed subsequent to the 1905 deed violated the private survey rule.

■ An examination of the 1905 deed reveals that no ambiguity exists which is apparent on the face of the document. While it is true that Foard and David Ingram (Summers' surveyor and expert witness) had differing opinions concerning the locations of certain calls contained in the deed, this conflict in testimony does not render the deed ambiguous. The boundaries contained in the 1905 deed would have been ascertainable had the surveyors been able to locate certain monuments.

■ The purported ambiguities in the 1905 deed exist because the surveyors disagree as to the locations of the chestnut oak tree and the Miller-Shoemaker line. The differences in opinion concerning these locations created an issue of fact to be resolved by the trier of fact. "A dispute concerning the actual location of a lost monument, being a question of fact, is for the jury to decide." 2 Minor, *The Law of Real Property* § 1076 n.1 (F. Ribble 2d ed. 1928). "The location of monuments which have been destroyed may of course be established by extrinsic evidence." *Id.*

■ The trial court admitted in evidence as an exhibit a plat prepared by Ingram. Gilbert objected to admission of this plat which illustrated Ingram's interpretations of the disputed property's boundaries established by the 1905 and 1906 deeds. During his testimony, Ingram used a yellow marker to highlight on the plat the boundaries described in the 1906 deed. The trial court

decided, at the conclusion of Ingram's testimony, that the disputed boundaries in the 1906 deed were irreconcilable with the 1905 deed and that the jury would not be allowed to consider the 1906 deed. The trial court orally instructed the jury to disregard the highlighted lines on the plat. The jury returned a verdict in favor of Summers based on the metes and bounds description contained in a 1914 deed in Summers' chain of title. The property description in the 1914 deed is the same as the metes and bounds description in the 1906 deed. The boundaries that the jury established were identical to the yellow highlighted boundaries on the plat which the court had instructed the jury to disregard.[2] Neither the plat nor Ingram's related testimony should have been admitted in evidence because the 1905 deed is not ambiguous. *See Cohan* v. *Thurston*, 223 Va. 523, 525, 292 S.E.2d 45, 46 (1982) (parol evidence is not admissible if a document is unambiguous).

Gilbert argues that the trial court erred when it admitted in evidence certain opinions rendered by Ingram because those opinions were speculative. Ingram testified that the Miller-Shoemaker line described in the 1905 deed was one of the Miller tract's eastern boundaries. He based his opinion upon two patents that he found in the Office of the United States Forest Service. These patents indicated that in 1824, someone named "Shoemaker" acquired property east of the Miller tract, and that, in 1851, two other persons identified as "Shoemaker" acquired property east of the Miller tract. He stated, however, that he did not know if anyone identified as "Shoemaker" owned any land on the eastern boundary of the Miller tract in 1905.

■ The trial court erred when it admitted Ingram's testimony in evidence. The testimony was speculative. His testimony was predicated upon a crucial missing fact; no one knows if a "Shoemaker" owned property east of Miller's property in 1905 when the disputed parcel was conveyed. Ingram's conclusion that the chestnut oak tree described in the 1905 deed was located on the eastern side of the Miller tract could not be supported unless he could establish that the Shoemaker tract was east of the Miller tract. Additionally, Ingram's opinion is predicated upon the location of a chestnut oak which he found on property near the U. S. Forest

---

[2] Gilbert argues that the trial court erred in entering judgment on the jury's verdict which was purportedly contrary to the court's oral instructions. We need not decide this issue because this case will be remanded for a new trial and deeds subsequent to the 1905 deed will not be admitted in evidence.

Service land. He did not know whether the chestnut oak existed in 1905.

An expert's opinion which is neither based upon facts within his own knowledge nor established by other evidence is speculative and possesses no evidential value. *Virginian Railway Co. v. Andrews*, 118 Va. 482, 87 S.E. 577 (1916). "Such statements violate the fundamental principle . . . that an inference cannot be drawn from a presumption. A verdict resting upon such foundation is not the fruit of evidence, but of conjecture, and cannot be upheld." *Id.* at 489, 87 S.E. at 580; *see also Seaward International* v. *Price Waterhouse*, 239 Va. 585, 391 S.E.2d 283 (1990) (expert's opinion must be supported by facts).

Gilbert argues that the trial court also erred because it granted Summers' motion to strike his claim of adverse possession at the conclusion of his evidence. We agree with the trial court that Gilbert failed to establish a *prima facie* case of adverse possession. "To establish title to land by adverse possession it is necessary to show actual, hostile, exclusive, visible and continuous possession for the statutory period of 15 years." *McIntosh* v. *Fire Company*, 220 Va. 553, 556-57, 260 S.E.2d 457, 459-60 (1979)(citations omitted). The disputed property is mountainous, has no dwellings, and has not been cultivated. At best, the record indicates that Gilbert's predecessors in title at one time conducted timber operations and raised cattle on a portion of the disputed property. However, there is no evidence in the record that reveals the length of time that Gilbert's predecessors in title conducted the cattle and timber businesses or even the locations of these activities. *See Craig-Giles Iron Co.* v. *Wickline*, 126 Va. 223, 101 S.E. 225 (1919) (mere cutting and sale of timber at widely separated intervals of time upon mountain land is not sufficient actual possession as to establish adverse possession).

We will affirm that portion of the trial court's judgment that granted Summers' motion to strike Gilbert's claim of adverse possession. The jury should not have been allowed to consider the Ingram plat or any deeds in Summers' chain of title after the 1905 deed. Additionally, the jury should not have been allowed to consider the speculative expert testimony. Therefore, we will re-

verse the judgment of the trial court and remand the case for further proceedings on Gilbert's claim of record ownership.

*Affirmed in part,*
*reversed in part,*
*and remanded.*