480 S.E.2d 112

**Daniel T. STREET**

v.

**Joyal C. STREET.**

**Record No. 2363–95–4.**

Court of Appeals of Virginia,
Richmond.

Jan. 21, 1997.

Rehearing En Banc Granted March 13, 1997.

**4**

M. Lee Anne Washington, Arlington (Surovell, Jackson, Colten & Dugan, P.C., Fairfax, on briefs), for appellant.

Richard J. Byrd, Fairfax (Byrd, Mische, Bevis, Bowen, Joseph & O'Connor, P.C., on brief), for appellee.

Present: MOON, C.J., and BENTON and ELDER, JJ.

ELDER, Judge.

Daniel T. Street (husband) appeals an order by the trial court denying his petition for modification of spousal and child support. Husband contends that the trial court erred in finding that he failed to prove a change of circumstances that warranted modification of his support obligations. For the reasons that follow, we reverse and remand.

## I.

## FACTS

The parties married in 1969 and had five children, two of whom were unemancipated at the time of the hearing. The parties separated in December, 1992, and Joyal C. Street (wife) filed for divorce in 1993.

During the marriage, husband supported wife and their children by working as a carpet installer. Until 1990, husband ran a carpet installation business. The business' primary

source of revenue was from subcontracts with L & L Carpet Company, a business operated by Eugene Lane, a long time friend of husband. Because husband's age and prior injuries had impaired his ability to install carpet, husband expanded his business in 1990 to include the retail sale of carpeting materials.

Although husband was a skilled carpet installer, the record shows that he was not an adept businessman. The new retail business was hindered by excessive debt and a frequently overdrawn checking account. At the end of 1994, current liabilities exceeded current assets by at least $36,000. By 1995, the business owed federal taxes for 1992, 1993, and 1994, had borrowed $18,000 from husband's relatives, and was compelled by suppliers to pay for shipments C.O.D. Although the gross revenue of husband's business averaged over one million dollars per year during the four full years of operation preceding the divorce hearing, husband's net income never exceeded 7.0% of the business' gross revenue.

In January, 1993, husband began seeing a professional counselor, Ms. Zeideberg. After meeting with husband for several months, Ms. Zeideberg noticed that husband had disorganized, unfocused thought patterns and regularly encountered difficulty maintaining a structured discussion during their appointments. Ms. Zeideberg, whose practice primarily involves working with children affected by Attention Deficit Disorder (ADD), suspected that husband might also suffer from ADD. Because Ms. Zeideberg knew that one tool used to diagnose ADD is to test a patient for a positive response to the drug Ritalin, she arranged for husband to take a low, test dosage of the drug. Ms. Zeideberg's suspicions were confirmed when husband responded well to the drug. She then referred husband to a clinical psychologist for a more complete evaluation in May, 1994. Husband did not pursue a diagnosis at that time but continued taking his test dosage until at least May, 1995.

On April 24, 25, and May 2, 1995, the trial court held a hearing on equitable distribution, spousal support and child

support and announced its ruling from the bench on May 18. The trial court determined that husband's carpet installation business had a fair market value of $160,000 and that husband drew $6,139 per month from his business and an additional $1,500 per month from "side jobs." The trial court awarded the business to husband, the marital home to wife, and ordered husband to pay $2,300 per month in spousal support and $921 per month in child support.

In the months following the trial court's ruling, husband's emotional stability and his capacity to function deteriorated. At the suggestion of Mr. Lane, husband decided that the financial problems plaguing husband's business were insurmountable, and he closed his business on June 16. Although husband took employment with Mr. Lane's business at a salary of $2,500 per month, he was ineffective due to his inability to focus and his frequent emotional breakdowns at work. Husband consulted a clinical psychologist, Dr. Eist, in August, 1995 and was diagnosed as suffering from both severe ADD and chronic depression. In September, another psychologist, Dr. Dixon, concluded that husband suffered from anxiety disorder as well.

Husband filed a petition for modification of spousal and child support on August 18, alleging a material change in both his mental health and the condition of his business. At the hearing on September 27, the only witnesses who testified about the purported change in husband's mental condition were Ms. Zeideberg and Dr. Dixon. Ms. Zeideberg testified that ADD is an involuntary, neurological disorder that impairs a person's ability to process information and may be exacerbated by stress. Ms. Zeideberg said that based on her observations of husband, which included over 100 appointments, he "seemed to get better" before the hearing in April and May, 1995. However, Ms. Zeideberg testified that husband's mental condition worsened after the trial court announced its ruling on May 18:

> Q. Okay. When you saw Mr. Street after May 19th, would you compare his behavior then to his behavior prior to the trial, prior to that time?

A. When I saw him very shortly after the trial in May, he was extremely disorganized, unable to focus on anything other than what had happened in the trial, attempts to discuss anything else met with cycling—with Mr. Street cycling back to simply his extreme distress about the trial, the outcome of that trial.

Q. Did he show symptoms of any other psychological problem other than attention deficit disorder?

A. After the trial, he also seemed significantly depressed and I believe very shortly after that he did indeed go for a full evaluation and was placed on medication for depression as well as for attention deficit disorder.

Q. In your opinion, did the man who appeared before you shortly after the trial, have the wherewithal to make business-type decisions?

  *    *    *    *    *    *

A. No. . . . And after the trial, he was not even able to focus enough to talk about how to deal with the problems that existed at that time in the business. We had been able to have a discussion prior to the trial, although again, he had not always followed through on things, but after the trial, I couldn't get him settled down enough to even say, okay, if you are having trouble collecting on this particular account, who can you work with, what could you do, in very concrete terms, about dealing with this, and he was just so distressed that he wasn't even able to focus and work on a structured kind of plan.

Dr. Dixon was the only other witness to testify on the issue of husband's mental health following the divorce. She testified that her first meeting with husband was on September 7, 1995, three weeks before the modification hearing. She testified that Dr. Eist had diagnosed husband with ADD and chronic depression in August and that she had concluded that husband suffered from anxiety disorder as well. Dr. Dixon testified that because ADD, chronic depression, and anxiety disorder are all neurochemical disorders that affect the neuro-

transmitter system, "they all make each other worse" when they occur simultaneously. When asked specifically whether specific stresses in husband's life had exacerbated husband's ADD, Dr. Dixon offered some speculative answers, but she added "there is a lot I don't know here because I am new in this picture." Then husband's counsel asked for Dr. Dixon's opinion on husband's ability to work:

Q. In the two sessions that you have had with Mr. Street, have you been able to or do you have an opinion of his current ability to make the kinds of decisions that someone managing a business would have to make, the sort of prioritization and discretionary decisions?

A. Yes.

Q. What is your opinion?

A. My opinion on that is there is no way on earth Mr. Street could run a business now, or I suspect ever, or in the past, frankly, effectively work.

The trial court later asked Dr. Dixon if the purported deterioration of husband's mental condition had occurred since May and she responded that based upon her observations of other patients whom she had treated she believed that "these behaviors have been with [Mr. Street] forever." When wife's counsel asked Dr. Dixon during cross-examination whether husband's life was more stressful before or after he separated from wife, Dr. Dixon said, "I can't—I have no idea."

At the conclusion of the evidence, the trial court denied husband's petition, finding that husband had voluntarily closed his business and that his psychological problems existed prior to the final divorce hearing. The trial court reasoned from the bench that *Antonelli v. Antonelli*, 242 Va. 152, 409 S.E.2d 117 (1991), prohibited a modification of husband's support obligations because husband's reduction in income resulted from the voluntary closure of his business. When husband's counsel argued that husband's closure of his business was involuntary because his exacerbated ADD made him incapable of managing a business, the trial court responded, "I don't necessarily buy the exacerbated ADD."

## II.

### MODIFICATION OF SPOUSAL AND CHILD SUPPORT

Husband argues that the trial court erred when it concluded that there was no material change in husband's mental health. We agree.

In a petition for modification of child support and spousal support, the burden is on the moving party to prove a material change in circumstances that warrants modification of support. *Yohay v. Ryan,* 4 Va.App. 559, 566, 359 S.E.2d 320, 324 (1987) (child support); *Furr v. Furr,* 13 Va.App. 479, 481, 413 S.E.2d 72, 73 (1992) (spousal support). The material change "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay." *Hollowell v. Hollowell,* 6 Va.App. 417, 419, 369 S.E.2d 451, 452 (1988). A modification of support payments may be warranted if the payor spouse suffers a serious impairment of physical or mental health that affects his or her ability to pay. *See Change in Financial Condition or Needs of Husband or Wife as Ground for Modification of Decree for Alimony or Maintenance,* 18 A.L.R.2d 10, 45 (1951); *In re Marriage of Colombo,* 197 Ill.App.3d 767, 768–69, 144 Ill.Dec. 159, 160, 555 N.E.2d 56, 57 (1990) (holding that evidence justified modification of support when husband's retirement was due to hospitalization for chest pains and diagnosis of anxiety neurosis); *Cliche v. Cliche,* 140 Vt. 540, 542, 442 A.2d 60, 61 (1982) (holding that husband failed to prove that reduction in income was involuntary when evidence failed to show change in his mental or physical health).

The parties agree that a change in husband's mental health affecting his ability to pay support, if proven, is a change of circumstances that warrants a modification of husband's support obligations. The issue in this case is the weight the trial court was required to give the expert testimony regarding husband's mental condition. It is well established that a fact finder is not required to accept the testimony of an expert witness merely because he or she was qualified as

an expert. *McLane v. Commonwealth,* 202 Va. 197, 205–06, 116 S.E.2d 274, 281 (1960). In fact, some expert testimony is not admissible as evidence, including that which concerns matters of common knowledge, such as the veracity of a witness, *Coppola v. Commonwealth,* 220 Va. 243, 252, 257 S.E.2d 797, 803–04 (1979), *cert. denied,* 444 U.S. 1103, 100 S.Ct. 1069, 62 L.Ed.2d 788 (1980), and that which is speculative. *Gilbert v. Summers,* 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990). However, when an expert does testify,

> [t]he evidence ... should be given the same consideration as is given that of any other witness, considering his opportunity for knowledge of the subject and subject matter as to which he testifies, his appearance, conduct, and demeanor on the stand.

*McLane,* 202 Va. at 206, 116 S.E.2d at 281 (citations omitted). Thus, as with lay witnesses, a fact finder may not arbitrarily disregard the uncontradicted testimony of an unimpeached expert witness whose testimony is neither inherently incredible nor inconsistent with facts in the record. *Cheatham v. Gregory,* 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984); *see also Spratley v. Commonwealth,* 154 Va. 854, 864, 152 S.E. 362, 365 (1930). When a fact finder disregards the testimony of an uncontradicted witness, "there must be something to justify the [fact finder] in not crediting ... the testimony of [the witness]...." *Spratley,* 154 Va. at 864, 152 S.E. at 365.

We hold that the trial court erred when it found that husband's mental health did not change materially after the trial court announced its final decree of divorce on May 18. "The findings of a trial court after an *ore tenus* hearing should not be disturbed on appeal unless they are plainly wrong or without evidence to support them. A trial court's conclusion based on undisputed evidence, however, does not have the same binding weight on appeal." *Schweider v. Schweider,* 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992).

In this case, the trial court erroneously disregarded the uncontradicted expert testimony of Ms. Zeideberg that husband's mental condition worsened in the months following

the divorce decree. Ms. Zeideberg testified that she had met with husband regularly during the two years before the divorce hearing and that husband "seemed to get better." However, after May 18, she testified that husband's ADD was exacerbated and that she noticed his increased disorganization and inability to focus on the problems affecting his business. She also said that husband showed symptoms of depression and was diagnosed with this disorder soon thereafter. No other witness with knowledge contradicted the testimony of Ms. Zeideberg that husband's mental condition worsened after the divorce decree.

In addition, Ms. Zeideberg's credibility was unimpeached during her cross-examination. Her testimony was consistent with the other evidence that indicated that husband was diagnosed with ADD, chronic depression, and anxiety disorder and that the combination of these three disorders augments the effects of each. Because Ms. Zeideberg's testimony was uncontradicted by any knowledgeable witness or any other evidence and because we find nothing in the record justifying the trial court's refusal to credit her testimony, the trial court erred when it arbitrarily disregarded her testimony and concluded that it "didn't buy the exacerbated ADD."

Wife contends that the trial court did not err because Dr. Dixon opined that husband's mental problems had plagued him "forever" and "there is no way on earth Mr. Street could run a business now, or I suspect ever...." However, Dr. Dixon testified that she examined husband for the first time on September 7, 1995 and had no actual knowledge of husband's mental condition prior to the entry of the divorce decree. In addition, Dr. Dixon stated that her testimony was based on her experience with other patients rather than her knowledge of husband's particular case and that "there is a lot I don't know here because I am new in this picture." "An expert's opinion which is neither based upon facts within his own knowledge nor established by other evidence is speculative and possesses no evidential value." *Gilbert,* 240 Va. at 160, 393 S.E.2d at 215.

Wife also contends that the trial court did not err because the evidence proved that the condition of husband's business did not change following the divorce decree and that the husband failed to prove that the closure of his business was involuntary. We disagree. Instead, we hold that the trial court has yet to address the issue of whether husband's impaired mental condition affects his ability to pay support. Although a reduction in financial ability is "warranted" only if the payor spouse proves that his or her lack of ability to pay is not due to either (1) his or her own voluntary act or (2) because of his or her neglect, *Hammers v. Hammers,* 216 Va. 30, 31–32, 216 S.E.2d 20, 21 (1975), voluntary underemployment is not an absolute bar to modification of support if other material changes in circumstances have occurred that are not the fault of the spouse seeking modification. *See Barnhill v. Brooks,* 15 Va.App. 696, 701, 427 S.E.2d 209, 212 (1993). In this case, husband proved the existence of a material change that was not his fault, the impairment of his mental health. The relevant issue then becomes whether or not the impairment of husband's mental health affected his ability to pay support at the level previously awarded by the trial court. Specifically, the issue in this case is whether husband can prove that his deteriorating psychological state so impaired his ability to operate his business, as it existed, that his decision to close it and accept less demanding employment was not his fault. Because the trial court erroneously concluded that husband failed to prove a material change in his mental health, it has yet to address the issue of whether this change affected husband's ability to operate a business and pay the level of support previously ordered.

For the foregoing reasons, we reverse and remand the decision of the trial court for proceedings consistent with this opinion.

*Reversed and remanded.*

MOON, Chief Judge, dissenting.

I respectfully dissent because the majority opinion in effect holds that a trial court was required to accept the opinion of

an expert witness. That holding I believe to be without precedent and contrary to Virginia law. It is the law of Virginia that in determining the weight to be given the testimony of an expert witness, the fact finder may consider the basis for the expert's opinion. *Gilbert v. Summers*, 240 Va. 155, 393 S.E.2d 213 (1990). In this case there was substantial reason for the trial judge not to be persuaded by the experts' testimony.

Daniel T. Street had the burden of proving that a change of circumstances justified a reduction in his child support payments. Within four weeks of the unfavorable support decision, Street permanently closed a business that had more than $1,300,000 in sales and netted Street an income of more than $80,000 in 1994. Two months after closing his business, Street filed his petition for modification. His expert testified that his ADD was such that "there is no way on earth Mr. Street could run a business now, or I suspect ever. . . ." This opinion is belied by the fact that for twenty years Street had conducted a business out of which in the preceding year he had taken considerable income. A court determined on May 18, 1995 that the business had a value of approximately $160,000 and that Street's income was $73,000. Mr. Street shut down his business and did not work very much thereafter. Street testified that when he was not working he was getting the children off to school. These were not his children but the children of his girlfriend with whom he had lived since shortly after leaving his wife.

The court had a right to question the motives and conduct of Mr. Street. When Street closed down his business, he basically turned it over to "a father figure" who began paying Street a lower flat salary. I do not intend to impugn the integrity of the expert, but we do not allow experts to determine who is telling the truth. No one before the majority in this panel has ever held that a trial judge was bound to accept a credibility determination made by an expert. *See Coppola v. Commonwealth*, 220 Va. 243, 251–53, 257 S.E.2d 797, 802–04 (1979). The experts' opinion in this case was largely based on the input of Mr. Street. The court found Mr. Street's conduct suspect and thus gave no weight to the expert opinion.

In summary, Mr. Street had the burden of proof in this

case. It was incumbent upon him to convince the trial judge that he was acting properly. He did not. I do not find that the trial judge's decision was plainly wrong.

Therefore, I would affirm.

## UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT

On February 3, 1997, came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on January 21, 1997, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on January 21, 1997, is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.