ELDER, Judge, with whom BENTON, Judge, joins,
dissenting.
For the reasons stated in the panel opinion, see Street v. Street, 24 Va.App. 2, 480 S.E.2d 112 (1997), and as stated herein, I would hold that the trial court abused its discretion when it arbitrarily rejected Ms. Zeidberg’s unimpeached, uncontradicted, and credible testimony that husband’s mental health had changed since the entry of the trial court’s awards of child and spousal support. I would remand this case for further proceedings to determine if the change in husband’s mental health affected his ability to pay child and spousal support at the level initially ordered.
A.
In the portion of its opinion addressing the weight a trial court is required to give to the testimony of expert witnesses, the majority holds that “it is within the fact finder’s discretion to accept or reject any of the testimony offered.” (Emphasis added). In a line of cases dating back to 1930, the Virginia Supreme Court has repeatedly held that triers of fact do not have carte blanche authority to reject the testimony of witnesses and that their discretion to determine credibility is limited by the boundaries of reason. Typical of this line of cases is Hodge v. American Family Life Assurance Co. of Columbus, in which the Court said:
While a jury, or a judge trying a case without a jury, are the judges of the weight of the testimony and the credibility of witnesses, they may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with the facts appearing in the record, even though such witnesses are interested in the outcome of the case.
*391 213 Va. 30, 31, 189 S.E.2d 351, 353 (1972) (emphasis added). Our Supreme Court has applied this doctrine at least twelve times since 1930. See Cheatham v. Gregory, 227 Va. 1, 4-5, 313 S.E.2d 368, 370 (1984); Chesson v. Commonwealth, 216 Va. 827, 832, 223 S.E.2d 923, 926 (1976); Williams v. Vaughan, 214 Va. 307, 310, 199 S.E.2d 515, 517 (1973); Hodge, 213 Va. at 31, 189 S.E.2d at 353; Presley v. Commonwealth, 185 Va. 261, 266-67, 38 S.E.2d 476, 478 (1946); Worsham v. Commonwealth, 184 Va. 192, 194, 34 S.E.2d 234, 235 (1945); Hamilton v. Commonwealth, 177 Va. 896, 903, 15 S.E.2d 94, 97 (1941); Fairfax v. Commonwealth, 177 Va. 824, 828, 13 S.E.2d 315, 316 (1941); Nelson v. Commonwealth, 168 Va. 742, 747, 191 S.E. 620, 622-23 (1937); Epperson v. DeJarnette, 164 Va. 482, 485-86, 180 S.E. 412, 413 (1935); Hawkins v. Commonwealth, 160 Va. 935, 942, 169 S.E. 558, 560 (1933); Spratley v. Commonwealth, 154 Va. 854, 864, 152 S.E. 362, 365 (1930).
This rule applies equally to the testimony of both lay and expert witnesses. See McLane v. Commonwealth, 202 Va. 197, 206, 116 S.E.2d 274, 281 (1960) (stating that expert testimony “should be given the same consideration as is given that of any other witness”). Thus, the majority’s holding that triers of fact are free to “reject any of the testimony offered” flies in the face of sixty-seven years of our Supreme Court’s precedents and violates the principle that this Court is “bound by decisions of the Supreme Court of Virginia and [is] without authority to overrule them.” Tart v. Commonwealth, 17 Va.App. 384, 392, 437 S.E.2d 219, 224 (1993) (citing Roane v. Roane, 12 Va.App. 989, 993, 407 S.E.2d 698, 700 (1991)).
The discretion afforded triers of fact to determine the credibility of witnesses, including experts, is broad but not without limits. Regarding experts, a fact finder is not required to accept the testimony of an expert witness merely because he or she was qualified as an expert. See McLane, 202 Va. at 205-06,116 S.E.2d at 281. In addition, some expert testimony is not admissible as evidence, including that which concerns matters of common knowledge, such as the veracity of witnesses and that which is speculative. See Coppola v. *392 Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 808-04 (1979) (regarding matters within common knowledge); Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990) (regarding speculative expert testimony). However, as with all oral testimony, a fact finder may not arbitrarily disregard the uncontradicted testimony of an unimpeached expert witness whose testimony is neither inherently incredible nor inconsistent with facts in the record. See Cheatham, 227 Va. at 4-5, 313 S.E.2d at 370; Spratley, 154 Va. at 864, 152 S.E. at 365.[1]
B.
Applying these principles to this case, I would hold that the trial court erred when it concluded that husband’s mental health did not change in the weeks following the entry of the trial court’s awards of child and spousal support in May, 1995. Specifically, I would hold that the trial court erred when it arbitrarily disregarded the expert testimony of Ms. Zeidberg that husband’s mental condition worsened during the summer months of 1995.
*393 Ms. Zeidberg was qualified as an expert “in children and adults with attention deficit disorder.” She testified that she began counseling husband in January, 1993 and that she had “met with him 111 times for better than 140 hours of contact.” She testified that ADD is an involuntary neurological disorder that impairs a person’s ability to process information and may be exacerbated by stress. She testified that she had long suspected that husband suffered from ADD and that another physician had diagnosed him with both ADD and depression in mid-1995. She testified that she met with husband regularly during the two year period before the hearing on child and spousal support and that husband “seemed to get better.” However, after May 18, 1995, the date of the trial court’s ruling on these issues, she testified that husband’s ADD became exacerbated. She testified that, while meeting with husband during this time, she observed that he was increasingly disorganized and unable to focus on the problems affecting his business.
Nothing in the record supports a finding that Ms. Zeidberg’s testimony was inherently incredible, impeached, or contradicted by other facts. First, Ms. Zeidberg’s expert testimony regarding the change in husband’s mental health was not inherently incredible. The record indicates that it was based on both an accurate understanding of the relevant facts and on a reasonable probability. See Gilbert, 240 Va. at 160, 393 S.E.2d at 215 (stating that an expert’s opinion possesses evidential value only if it is not speculative, i.e., if it is “based upon facts within [the expert’s] knowledge or established by other evidence”); Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985) (holding that a doctor’s medical opinion was not credible evidence because it was based upon a faulty premise); Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421 (1980) (stating that a medical opinion is speculative if based on a “possibility” and admissible if based on a “reasonable probability”). Ms. Zeidberg’s testimony established that her opinion was based upon both her expert knowledge of adults suffering from ADD and her extensive knowledge of husband’s case, which she gleaned *394 from meeting with husband regularly over a two and one-half year period. In addition, the manner in which she expressed her opinion indicated that it was based on a reasonable probability and not a mere possibility.
In addition, Ms. Zeidberg’s testimony was unimpeached and uncontradicted by other evidence in the record. During his cross-examination of Ms. Zeidberg, wife’s counsel did not offer evidence that established that Ms. Zeidberg had either a bad character for veracity or a bias in favor of husband or against wife. Wife’s counsel introduced no prior statements by Ms. Zeidberg that were inconsistent with her direct testimony. At the conclusion of husband’s case-in-chief, wife’s counsel declined to offer any evidence that conflicted with Ms. Zeidberg’s account of husband’s deteriorating mental condition. In addition, Ms. Zeidberg’s testimony was consistent with the other evidence offered by husband. In particular, the testimony of Dr. Dixon, who also testified on husband’s behalf, did not contradict Ms. Zeidberg’s testimony about the change in husband’s mental health. Dr. Dixon corroborated Ms. Zeidberg’s testimony that husband suffered from ADD long before he was ordered to pay support. Dr. Dixon’s testimony also indicated that she lacked sufficient knowledge about husband’s case to opine whether or not his ADD had worsened since May 18.
Because Ms. Zeidberg’s testimony regarding the deterioration of husband’s mental condition was unimpeached, uncontradicted, and not inherently incredible, I would hold that the trial court acted arbitrarily when it disregarded her testimony and concluded that husband’s mental health had not changed since the entry of its support order. See Hodge, 213 Va. at 32, 189 S.E.2d at 353 (holding that the trial court’s “mere belief or speculation” that husband was lying was not sufficient to disregard his uncontradicted, credible testimony that he did not provoke his wife to shoot him); see also Cheatham, 227 Va. at 4-5, 313 S.E.2d at 370. I would remand this case to the trial court for proceedings to determine whether the change in *395 husband’s mental health warrants the modification of his support obligations.
For the foregoing reasons, I dissent.

. The majority relies on Bridgeman v. Commonwealth, 3 Va.App. 523, 528, 351 S.E.2d 598, 601 (1986), as authority to support its holding that "[i]t is well established that ... it is within the fact finder’s discretion to accept or reject any of the testimony offered.” However, the text of Bridgeman does not expressly support this proposition and reading it to do so constitutes, in my opinion, an overbroad interpretation of its language. The cited portion of Bridgeman states:
The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide.
Id. at 528, 351 S.E.2d at 601. This language, which is unsupported by citation to precedent, makes no reference to the line of cases beginning with Spratley in 1930 and concluding with Cheatham in 1984 that qualify a fact finder’s discretion to determine the credibility of witnesses by prohibiting the arbitrary rejection of testimony. I do not believe that the panel of this Court that decided Bridgeman intended this language to expand the discretion of fact finders beyond the limits repeatedly set forth by our Supreme Court. Thus, I believe that an accurate interpretation of this language requires it to be read together with, and not contrary to, the Spratley line of cases.