COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Elder and Senior Judge Cole
Argued at Salem, Virginia


JOHN WADE DULCIE
                                   MEMORANDUM OPINION[*] BY
v.        Record No. 1303-97-3      JUDGE LARRY G. ELDER
                                    DECEMBER 23, 1997
G & A COAL COMPANY, INC., ET AL.

          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Gerald F. Sharp (Browning, Lamie & Sharp, on
              brief), for appellant.

              Stanford T. Mullins (Street, Street, Street,
              Scott & Bowman, on brief), for appellees.



     John Wade Dulcie (appellant) appeals a decision of the

Workers' Compensation Commission (commission) denying his

change-in-condition claim for benefits.  He contends that the

evidence was insufficient to support the commission's finding

that he failed to prove that the recent tear of cartilage in his

left knee was causally connected to a previously compensated tear

of cartilage in the same knee.  For the reasons that follow, we

reverse and remand.

                              I.

                            FACTS

     Since before 1994, appellant has worked as a roof bolter in

coal mines operated by G & A Coal Company, Inc. (employer).

Appellant's duties require him to work on his knees or in a

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

crouched position "all the time."

On May 13, 1994, appellant twisted his knee at work while trying to avoid a "rock fall."  In the weeks following this incident, appellant experienced "repeated locking episodes in the knee which required that he manually straighten the knee."  On June 7, 1994, Dr. Philip J. Branson examined appellant and concluded that he suffered a torn lateral meniscus in his left knee.  On June 24, 1994, Dr. Branson performed an arthroscopy on appellant's left knee to repair the problem.  The doctor found "a tear through the outer 1/3 of the lateral meniscus medial to and extending up to the popliteus hiatus."  Appellant was released to return to work on September 20 and resumed his regular duties on September 21.

Employer accepted appellant's knee injury (1994 injury) as compensable.  Pursuant to a memorandum of agreement, employer and Old Republic Insurance Company (insurer) paid temporary total disability benefits from June 24, 1994 through September 20, 1994, permanent partial disability benefits for a five percent loss of use of appellant's left leg, and appellant's medical expenses.

On April 24, 1996, appellant's knee locked up as he was sitting on the floor of a scoop.  Appellant saw Dr. Branson the following day, and the doctor diagnosed appellant with another tear of the lateral meniscus in his left knee.  Dr. Branson recommended that appellant undergo another arthroscopy of his

2

left knee to repair the torn cartilage. On June 4, 1996, Dr. Branson expressed his opinion regarding the cause of appellant's recently torn cartilage. He stated:

> It is my opinion that since [appellant] recovered for more than three months and healed and returned to work that the new injury reported getting out of the scoop is probably the causative problem requiring surgery at this point.

Appellant filed two claims for benefits regarding the "1996 injury" to his left knee: one alleging that he had suffered a change in condition causally connected to his 1994 injury and one alleging that he had suffered a new injury to his knee. Following a hearing, a deputy commissioner denied both of appellant's claims. Appellant appealed, and the full commission affirmed the deputy commissioner's decisions.

II.

CHANGE IN CONDITION

On appeal, appellant does not challenge the commission's conclusion that he did not suffer a new injury by accident on April 24, 1996. Instead, he contends that the commission erred when it concluded that he did not experience a compensable change in condition related to his 1994 injury. Appellant argues that the evidence is insufficient to support the commission's factual finding that he failed to prove by a preponderance of the evidence that his 1996 injury was causally connected to his 1994 injury. We agree.

3

A.

Under Code § 65.2-708, a claimant may request the commission to increase compensation previously awarded "on the ground of a change in condition." "In an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986).

> The General Assembly has defined a "change in condition" as: a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation.

Code § 65.2-101. A change in an employee's physical condition that is compensable under Code § 65.2-708 includes any "'progression, deterioration, or aggravation'" of a previously compensated injury. Leonard v. Arnold, 218 Va. 210, 213-14, 237 S.E.2d 97, 99 (1977) (quoting 3 Arthur Larson, The Law of Workmen's Compensation § 81.31 (1976)). However, "a new and separate accidental injury" may not be compensated as a change in condition of a previous injury. Id. at 214, 237 S.E.2d at 99. Thus, when an employee seeks compensation under Code § 65.2-708, the employee must prove that the change in his condition is "causally connected with the injury originally compensated." King's Market v. Porter, 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984).

"Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991); see Code § 65.2-706(A). On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). It is well established that the commission's determination of causation is a factual finding that will not be disturbed on appeal if supported by credible evidence. See American Filtrona Co. v. Hanford, 16 Va. App. 159, 165, 428 S.E.2d 511, 515 (1993) (citing Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989)).

B.

We hold that the commission erred when it concluded that appellant did not suffer a compensable change in condition. Specifically, the commission's factual finding that appellant failed to prove that his 1996 injury was causally connected to the 1994 injury was not supported by credible evidence.

The commission denied appellant's change-in-condition claim because it found that the tear in the cartilage in his left knee diagnosed by Dr. Branson in April 1996 was not causally connected to his 1994 injury. Although the commission referred to appellant's testimony "that he had experienced ongoing pain in the knee," it based its factual finding of causation on two

5

pieces of evidence: (1) Dr. Branson's opinion that appellant's recent cartilage tear was not "caused by the original compensable injury" and (2) the fact that "[appellant] did not receive medical treatment between December 1994 and April 25, 1996, a period of some 16 months."

None of the evidence relied upon by the commission supports its finding that appellant failed to prove a causal connection between his 1996 injury and his 1994 injury. First, Dr. Branson's opinion regarding causation was speculative and not "credible" as a matter of law. As such, it provides no support for the commission's factual finding of causation.

In order to possess relevant evidential value, a doctor's expert medical opinion must not be speculative. See Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990); Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421 (1980). A doctor's expert medical opinion is not speculative if it is based on an accurate understanding of the relevant facts and if it is based on a reasonable probability and not a mere possibility. See Gilbert, 240 Va. at 160, 393 S.E.2d at 215 (stating that an expert's opinion is speculative if not based upon facts within his knowledge or established by other evidence); Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985) (holding that a doctor's medical opinion was not credible when based upon a faulty premise); Spruill, 221 Va. at 479, 271 S.E.2d at 421 (stating that a medical opinion is speculative if based on

6

a "possibility" and admissible if based on a "reasonable probability"); <u>Sneed v. Morengo, Inc.</u>, 19 Va. App. 199, 205, 450 S.E.2d 167, 171 (1994) (stating that "[w]henever a physician's diagnosis flows from an assumption that rests upon a faulty premise . . . the commission may refuse, <u>and often will be required to refuse</u>, to attribute any weight to that opinion" (emphasis added)).

Dr. Branson's opinion regarding causation was speculative, and thus incompetent, because it was based on a flawed understanding of the history of appellant's recovery from his 1994 injury.  In June 1996, the doctor opined that the recent tear in appellant's left lateral meniscus was a new injury and <u>not</u> causally related to appellant's 1994 injury because "[appellant] recovered for more than three months and <u>healed and returned to work</u>."  (Emphasis added).  However, both Dr. Branson's own notes and appellant's testimony established that the injury to appellant's knee in 1994 never healed completely. Prior to appellant's surgery in 1994, Dr. Branson warned him that the arthroscopic procedure carried with it a twenty percent risk of failure and that appellant might continue to experience "continued pain, swelling and symptoms, despite surgical intervention."  Dr. Branson's own notes indicate that appellant told him in December 1994, more than five months after his initial surgery, and three months after he was released to return to work, that he still experienced "occasional weakness and

7

popping" in his left knee.  Dr. Branson's notes also indicate that, when appellant returned to see the doctor following the locking of his knee on April 24, 1996, appellant stated that "since [his 1994 surgery] he had improvement of pain but has occasional feelings of locking in the knee."  (Emphasis added). Appellant's testimony, which was unrebutted, established that he experienced locking in his knee almost immediately upon his return to work in September 1994.  He testified that the locking episodes increased in frequency over time and that the condition of his left knee deteriorated to the point that he was unable to manually unlock his knee on April 24, 1996.  Because the record established that appellant was never free of symptoms associated with torn knee cartilage following his 1994 surgery, Dr. Branson's statement that appellant's injury had "healed" prior to his return to work in September 1994 was inaccurate.  This flawed understanding of appellant's recovery, which provided the foundation for Dr. Branson's opinion that appellant's 1996 injury was "new," indicates that the doctor's opinion was speculative and thus legally incompetent to prove causation.

In addition, the other fact relied upon by the commission has no tendency to support its finding of causation.  The commission reasoned that appellant's testimony that he "experienced ongoing pain in the knee" was insufficient to prove a causal connection between his 1996 injury and his 1994 injury because "[he] did not receive medical treatment between December

1994 and April 25, 1996, a period of some 16 months." However, appellant's unrebutted testimony established both that he experienced increased locking in his left knee during this time and that he was always able to alleviate this symptom by manually straightening his leg. In addition, appellant's testimony indicated that, as long as he could unlock his knee himself, he was able to perform his regular duties without interruption. Appellant testified that he did not see Dr. Branson from December 1994 until April 1996 because "[he] didn't think it would do any good because . . . as long as [he] could straighten [his left knee] out and pop it back in it felt fine." In light of both this unrebutted evidence and the fact that Dr. Branson's opinion is legally incompetent, the bare fact that appellant decided against seeking early medical treatment for his continuing knee problems does not support the commission's finding that he failed to prove that his 1996 injury was causally connected to his 1994 injury.

Because no credible evidence supports the commission's finding that appellant failed to establish a causal connection between his 1996 injury and his 1994 injury, this finding is not binding on appeal.

Based on our review of the record, we hold that appellant proved as a matter of law that the change in condition he experienced in April 1996 was causally connected to his 1994 injury. Although the record does not contain a competent medical

9

opinion regarding causation, a claimant is not required to produce a physician's medical opinion in order to establish causation. Dollar General Store v. Cridlin, 22 Va. App. 171, 176-77, 468 S.E.2d 152, 154-55 (1996). Causation of a condition may be proved by either direct or circumstantial evidence, including medical evidence or "[t]he testimony of a claimant." Id. at 176, 468 S.E.2d at 154.

Dr. Branson's notes and appellant's testimony established that the cartilage tear diagnosed by Dr. Branson in 1996 was causally connected to the 1994 injury. Appellant testified that the injury to his left knee "never was fixed right" following his surgery in 1994. He testified that when he returned to work in September 1994, his left knee locked up "every once and a while." Dr. Branson noted in December 1994 that appellant reported experiencing occasional "popping" in his knee. Appellant testified that the locking of his knee increased in frequency over time until it occurred thirty or forty times within an eight-hour period. Although appellant was always able to manually unlock his left knee, this procedure became more difficult in the three months preceding April 1996. Appellant testified that, on April 24, 1996, his left knee locked up while he was sitting on the floor of a crowded scoop. He testified that he discovered that his knee had locked when he "stood up" from his sitting position to exit the scoop. Unlike previous episodes of locking, appellant was unable to "unlock" or

10

straighten his left knee himself.  Dr. Branson's notes indicate that when appellant saw the doctor the following day, appellant reported a history of "occasional feelings of locking in the knee" since his surgery in 1994.  In light of this evidence, we conclude that appellant established as a matter of law a causal connection between his 1996 change in condition and his 1994 injury.

For the foregoing reasons, we reverse the decision of the commission denying appellant's change-in-condition claim.  We remand appellant's claim for further proceedings consistent with this memorandum opinion.

<u>Reversed and remanded</u>.