## Staunton

JAMES JUNIOR SULLIVAN, ALIAS, ETC. v. COMMONWEALTH OF VIRGINIA.

September 5, 1969.

Record No. 6960.

Present, All the Justices.

*Joseph B. Bullock*, for plaintiff in error.

*Walter H. Ryland, Assistant Attorney General (Robert Y. Button, Attorney General*, on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

The two-count indictment in this case charged James Junior Sullivan with burglary of the office of James M. Duncan, Jr. & Associates, Inc. and with burglary of the dwelling of James M. Duncan, III, each on May 28, 1966. The trial court, sitting without a jury, convicted Sullivan of burglary on both counts and imposed two ten-year sentences. The only susbtantial question on this appeal is whether stolen property, searched for and seized at the home of Sullivan's mother, was improperly admitted in evidence.

Sullivan was arrested on June 13, 1966 under the circumstances described in *Sullivan* v. *Commonwealth*, Record No. 6959, *supra* page 201. When arrested, Sullivan was wearing a ring that the officers believed he had stolen while committing a burglary in January 1966. Suspecting that other articles stolen in January had been secreted in the home of Sullivan's mother, the officers obtained a warrant authorizing the search of her home.

When the officers arrived at the mother's home on June 13, they advised her that they had a search warrant. She told the officers that they did not need a search warrant, that they could search her home with or without a warrant. The officers then searched the home, but found nothing that had been stolen during the commission of the burglary in January. They did find, however, in a bureau in an upstairs bedroom, articles that had been stolen from the Duncan premises on May 28.

Sullivan had a key to his mother's house, and his mother said the house was "always open" to him. When he slept there, he slept on a foldaway bed in the living room on the first floor. It is difficult to determine from the sparse evidence in the record whether Sullivan was living at his mother's home at the time of his arrest. The trial court found, however, that Sullivan was not living there when arrested but had merely an invitation to stay there. We find support in the evidence for these findings and will accept them for the purposes of this opinion.

After hearing evidence on a pretrial motion to suppress the evidence seized from the mother's home, the trial court ruled the search warrant invalid because the affidavit was insufficient.* We agree with that ruling.

■ The court overruled the motion to suppress, however, because it found that Sullivan's mother had consented to the search. Consistent with that ruling, the court admitted the seized evidence at Sullivan's trial.

The trial court relied primarily on the *Rees* cases to support its finding that Sullivan's mother had consented to the search. *Rees* v. *Commonwealth*, 203 Va. 850, 127 S.E.2d 406 (1962); *Rees* v. *Peyton*, 341 F.2d 859 (4th Cir. 1965). But Sullivan's mother consented to a search of her home after being told that the police officers had a search warrant, whereas Rees's father and mother consented to a search of their home without being told anything about a search warrant. (In

---

* The Commonwealth conceded in the trial court that the affidavit was insufficient.

fact, no warrant had been obtained to search the Rees home.) And the Supreme Court of the United States has held that a valid consent to a search cannot be given "after the official conducting the search has asserted that he possesses a warrant". *Bumper* v. *North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797, 802 (1968). So we must hold that Sullivan's mother gave no valid consent to the search.

This brings us to the question whether Sullivan had standing to object to the search of his mother's home and to the seizure of articles found there.

Before *Jones* v. *United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), a defendant had standing only if he owned or had the right to possession of the searched premises or the seized articles. See *Id.* at 266, 80 S.Ct. at 733, 4 L.Ed.2d at 705. Relaxing that rule, the Court in *Jones* held that "anyone legitimately on premises where a search occurs may challenge its legality * * * when its fruits are proposed to be used against him". *Id.* at 267, 80 S.Ct. at 734, 4 L.Ed.2d at 706; *see Mancusi* v. *DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154, 1159 (1968).

*Mancusi* v. *DeForte, supra,* involved a warrantless search of union offices and a seizure of union records from an office shared by DeForte and other union officials. DeForte, who had custody of the records and was present during the search and seizure, objected to the admission of the records at his criminal trial in a state court. The Supreme Court held that DeForte had standing to object not because he had any property right in the premises or the records, but because "the area was one in which there was a reasonable expectation of freedom from governmental intrusion". *Id.* at 368, 88 S.Ct. at 2124, 20 L.Ed.2d at 1159.

Dissenting in *Mancusi*, Mr. Justice Black said "the Court's opinion indicates to me that the Court is preparing the way to use *Jones* to eliminate entirely the requirement for standing to raise a search and seizure question and to permit a search to be challenged at any time, at any place, and under all circumstances, regardless of the defendant's relationship to the person or place searched or to the things seized". *Id.* at 376, 88 S.Ct. at 2127-2128, 20 L.Ed.2d at 1164.

In a later case, however, the Court announced: "We adhere . . . to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted". *Alderman* v. *United States*, 394 U.S. 165, 174, 89 S.Ct.

961, 966-67, 22 L.Ed.2d 176, 187 (1969) (defendant lacked standing to object to monitoring of conversations of other persons on premises not owned by him). And the Court reaffirmed the following rule stated in *Jones:*

> " 'In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at some-one else. * * * Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy.' "

*Alderman* v. *United States, supra* at 173, 89 S.Ct. at 966, 22 L.Ed.2d at 186, quoting from *Jones* v. *United States, supra.*

Under the rules that have been laid down, Sullivan would have been "the victim of an invasion of privacy" and therefore entitled to standing if (1) he owned or had the right to possession of his mother's home, *Gibson* v. *United States,* 149 F.2d 381 (D.C. Cir. 1945), (2) his mother's home was also his home, *Bumper* v. *North Carolina, supra,* (3) he owned or had the right to possession of the seized property, *Simmons* v. *United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), *United States* v. *Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), or (4) he had been at his mother's home when the search occurred, *Jones* v. *United States, supra, Mancusi* v. *DeForte, supra.* None of these rules being satisfied, we conclude that Sullivan was not "the victim of an invasion of privacy" and had no standing to object to the search and seizure.

*Affirmed.*