## Richmond

EDDIE B. HENRY v. COMMONWEALTH OF VIRGINIA.

June 15, 1970.

Record No. 7166.

Present, I'Anson, Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*David C. Dorset,* for plaintiff in error.

*Anthony F. Troy, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

Eddie B. Henry, whom a jury found guilty of robbery, appeals from a conviction order sentencing him to ten years in the penitentiary. Two questions raised by defense counsel merit discussion: (1) Was a pistol introduced in evidence obtained by an unlawful search and seizure? (2) Were the pretrial identifications of Henry made under circumstances so prejudicial to him as to violate due process?

The robbery occurred on February 10, 1967 in a grocery store owned by Joseph Fulcher at 2301 Venable Street in the City of Rich-

mond. Shortly after Fulcher had opened for business, the assailant, later identified as Henry, came into the store. After picking up several articles, Henry came to the check-out counter, pointed a pistol at Fulcher and demanded that he open the cash register and the safe. Fulcher opened the cash register and handed its contents to Henry. While Fulcher was engaged in opening the safe, a bread deliveryman, Clarence Long, came into the store. With his pistol Henry subjected Long, as well as Fulcher, seized cash and checks, and fled.

Several days later Fulcher identified a person named Elijah Bynum, who was in police custody, as the person who had robbed him on February 10. On the same day Fulcher called the police to advise them that he had wrongly identified Bynum.

Later, Fulcher told the police he had received information that one "Eddie", who was staying at Nathaniel Massey's home at 2701 Venable Street, might have been Fulcher's assailant. On February 22 the police went to Massey's home, did not find Massey, but received information that he was riding in a black Pontiac. Shortly thereafter the police stopped a black Pontiac driven by Massey and carrying Henry as a passenger in the back seat. Henry got out of the car and walked away, but was apprehended by the police in a nearby store.

After Henry had admitted he had no job, the police arrested him for vagrancy and brought him back to the place where the Pontiac had been stopped. Massey said that his brother-in-law owned the Pontiac, but that "it was in his [Massey's] possession". The police then told Massey that they had reason to believe there was a weapon in the back seat of the Pontiac. They said they did not have a search warrant, but "would be glad to call the Magistrate and obtain a search warrant to search the car". Massey replied, "you don't need a search warrant to search my car . . . you go right ahead". He said that if there was any weapon in the back seat, Henry had put it there. The police searched the Pontiac and found a pistol behind the back seat. The record does not show who owned the pistol.

The police brought Henry to Fulcher's store. Fulcher came outside, looked at Henry, and asked that he be brought inside the store. Henry came into the store, stood at the check-out counter and spoke a few words. Fulcher then identified him as the person who had robbed him on February 10.

In a lineup on March 1, in the presence of Henry's counsel, Long

picked out Henry as the person who had committed the robbery on February 10.

1

. The pistol found in the Pontiac on February 22 was admitted in evidence at Henry's trial. Defense counsel contends that the pistol was improperly admitted in evidence because it was seized after an unlawful search. Among other theories for sustaining the search and seizure, the Attorney General relies upon the consent of Nathaniel Massey, who had possession of the automobile.

We adopt as controlling the reasoning applied by the Supreme Court of Delaware in *Jenkins* v. *State*, 230 A.2d 262 (Del. 1967).[1] That case involved the warrantless search of an apartment, consented to by Leona Marshall, the lessee of the apartment, but directed at defendant Thornton A. Jenkins who lived with Miss Marshall in the apartment and gave her rent money. The court held that because Miss Marshall possessed "sufficient control" over the apartment, her consent validated the search and permitted the use of seized evidence against the nonconsenting Jenkins.

The court pointed out that "sufficient control" is sometimes predicated upon an agency concept, a theory that was criticized in *Stoner* v. *California*, 376 U.S. 483, 84 S. Ct. 889, 11 L.Ed.2d 856 (1964). But the Court continued:

" 'Sufficient control' is more frequently predicated upon a joint and equal possession and control of the premises searched. The

[1] Cases and comments dealing with third party consent are abundant. *See* Annot. 31 A.L.R.2d 1078 (1953); *Hotis, Search of Motor Vehicles*, 73 Dick.L.Rev. 363, 417-20 (1969); 51 Cornell L.Q. 795 (1966); 79 Harv.L.Rev. 1513 (1966); *Third-Party Consent to Search and Seizure*, 41 St. John's L.Rev. 82 (1966); *Third Party Consent to Search and Seizure*, 33 U.Chi.L.Rev. 797 (1966). We have not been referred, however, to any case involving third party consent under the precise circumstances presented in this case: consent by a bailee to an automobile search directed at a nonconsenting person, who has no possessory right in the automobile but is present at the time of the search.

The fact that Henry was present when the automobile was searched probably has relevance only to the question whether he had standing to object to the search or seizure. *See generally Sullivan* v. *Commonwealth*, 210 Va. 205, 169 S.E.2d 580 (1969). Basing our decision in this case on third party consent, we do not decide whether Henry did or did not have standing to object to the search or seizure. The following cases relied upon by defense counsel are not controlling since they relate to standing: *Jones* v. *United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Contreras* v. *United States*, 291 F.2d 63 (9th Cir. 1961); *State* v. *Parsons*, 83 N.J. Super. 430, 200 A.2d 340 (1964).

line of reasoning which underlies the joint control doctrine may be stated as follows: the consenting person has the authority, acting in his own behalf and not as agent for the nonconsenter, to permit a search of premises to which he has immediate right of possession and control; a search pursuant to such consent is reasonable, absent other circumstances tending to make it unreasonable; evidence that is the product of a reasonable search may be used against anyone. Thus, where two or more persons have joint and equal possession and control of the premises, the prevailing rule is that any one of them may consent to a search; and the evidence thus disclosed may be used against any of them.

"Accepting the possession and control rule, as we do, where the consenting person has more than joint and equal possession and control of the premises, *a fortiori*, he has sufficient control to bind other occupants by his consent to a search. Thus, in *Burge* v. *United States* (9 Cir., 1965) 342 F.2d 408, the consent of the lessee of an apartment was held to bind the guest-occupant. And, in *State* v. *Malcolm*, Del., 203 A.2d 270 (1964), the Superior Court held that the parent could effectively bind her minor son by her consent to a search of the home. See also *State* v. *Kinderman* 271 Minn. 405, 408, 136 N.W.2d 577 (1965); *Maxwell* v. *Stephens* (8 Cir., 1965) 348 F.2d 325.

"Returning to the case at hand: although Miss Marshall and Jenkins were joint occupants, it is clear that Miss Marshall, as sole legal tenant, had a superior right of possession and control. By virtue of that superior right, it is our conclusion that she was able to give effective consent to a search of the premises. Because of her consent, the search was reasonable and the product of that search was admissible in evidence against Jenkins." *Jenkins* v. *State*, *supra* at 270-271.

According to the evidence in this case, Massey had the right to possess the Pontiac belonging to his brother-in-law, whereas Henry had no possessory right. Because Massey consented to the search, we hold that the search was reasonable and the product of the search, the pistol found in the automobile, was admissible in evidence.

2

At Henry's trial both Fulcher and Long positively identified Henry as the person who committed the robbery on February 10. Defense

counsel made no objection to that evidence. He did object, however, to the evidence proffered by the Commonwealth and admitted by the court respecting Fulcher's and Long's identifications of Henry on February 22 and March 1.

Defense counsel contends that both pretrial identifications were made under circumstances so prejudicial to Henry as to violate due process, citing *Stovall* v. *Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).[2] He contends that Henry was prejudiced by Fulcher's pretrial identification because there was no lineup. And he contends that Henry was prejudiced by Long's pretrial identification because Henry's counsel, who was present at the lineup, did not talk to Henry before the lineup.

Fulcher's and Long's in-court identifications, not being objected to, were properly admitted as evidence.[3] If the jury accepted that evidence, which it did in fact accept, the jury was warranted in finding Henry guilty. And in view of that evidence, we find there is no reasonable possibility that the evidence of the pretrial identifications contributed to Henry's conviction. So even if the admission of evidence respecting the pretrial identifications constituted error, a question we do not decide, the admission of such evidence was harmless error. *See Chapman* v. *California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

*Affirmed.*

---

[2] Because *United States* v. *Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert* v. *California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), are not applicable to identifications that took place before June 12, 1967, defense counsel does not rely on those cases.

Counsel relies on the dissenting opinion in *Fogg* v. *Commonwealth,* 208 Va. 541, 159 S.E.2d 616 (1968), but that opinion does not set forth the existing rule in Virginia.

[3] At oral argument counsel conceded that no issue had been raised whether the in-court identifications were tainted by the pretrial identifications.