# Richmond

James Adolph Chesson v. Commonwealth of Virginia.

April 23, 1976.

Record No. 750639.

Present, All the Justices.

*Robert S. Ganey*, for plaintiff in error.

*Jerry P. Slonaker, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Carrico, J., delivered the opinion of the court.

This case involves the theft of a Walker coonhound. For the theft, the defendant, James Adolph Chesson, was convicted by a jury of larceny,[1] and his punishment was fixed at three years in the penitentiary. To the final order imposing the sentence, we granted a writ of error to decide the question whether the defendant had standing to attack the validity of an alleged search of a kennel and the seizure therefrom of the dog following its theft.

Before trial, contending that the evidence relating to discovery and seizure of the dog was illegally obtained, the defendant moved to suppress the evidence. After a hearing, the motion was denied, and the evidence was later admitted at trial.

The record shows that on October 8, 1974, the dog was stolen from the home of E. C. C. Woods, III, in Hanover County. Later the same day, the defendant, a resident of Henrico County, transported the dog to the home of Maurice Harver in Dinwiddie County for the purpose of ascertaining whether the hound "would tree coons." When the dog was turned loose, it ran away. The defendant searched unsuccessfully for the dog, and then returned home.

The next day, the dog was found by one of Harver's neighbors and placed in Harver's pen. Later in the day, Woods and a game warden visited the Harver property. Finding no one home, they went to the pen and observed the dog. Woods identified the hound as his, removed it from the pen, and he and the game warden carried the animal away in the warden's automobile. The discovery and seizure of the dog were accomplished without a search warrant.

We will assume that the discovery and removal of the dog by Woods and the game warden constituted a police search and seizure, without a warrant, of evidence relating to the crime for which the defendant later was charged. This brings into focus the question of the defendant's standing to attack the validity of the search and seizure.

■ Prior to the decision in *Jones* v. *United States*, 362 U.S. 257 (1960), standing was afforded only when an accused owned or possessed the seized property or had a substantial possessory interest in the premises searched. These restricted bases for standing, the *Jones* court said, placed an accused charged with a possessory crime, *e.g.*, possession of narcotics, in the dilemma of having to admit possession to gain standing while facing the risk that the admission would be used against him at trial. The previously restricted rules, the court opined, also permitted the prosecution to take advantage of contradictory

---

[1] Code § 18.1-102, now § 18.2-97.

positions by alleging possession as part of the crime charged but denying possession sufficient to afford the accused standing.

To correct what it termed a situation "not consonant with the amenities," the court fashioned two new rules relative to standing. First, it established "automatic" standing where "possession both convicts and confers standing." In such a situation, the court held, there is no "necessity for a preliminary showing of an interest in the premises searched or the property seized." 362 U.S. at 263. Second, the court established an additional basis for standing. It held that it is not necessary that an accused have a possessory interest in the premises searched; he is entitled to standing if he is "legitimately on premises where a search occurs." 362 U.S. at 267.

Later, in *Simmons* v. *United States*, 390 U.S. 377 (1968), the court considered the question whether persons charged with non-possessory crimes, *e.g.*, bank robbery, "are entitled to be relieved of their dilemma entirely," the dilemma consisting of the necessity, referred to in *Jones*, of admitting possession to gain standing while facing the risk that the admission would be used at trial to prove an element of the offense. The court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." 390 U.S. at 394.

Then, in *Brown* v. *United States*, 411 U.S. 223 (1973), the court considered the contention of the defendants, charged with transporting and conspiring to transport stolen goods, that they were entitled to the *Jones* "automatic" standing to challenge the seizure of goods from the store of a co-conspirator. The court rejected the contention, holding that there was no standing because the defendants (a) were not on the premises at the time of the contested search and seizure, (b) alleged no proprietary or possessory interest in the premises, and (c) were not charged with an offense that included, as an essential element of the offense charged, possession of the seized evidence *at the time of the contested search and seizure*. 411 U.S. at 229. The court intimated that, because *Simmons* barred use at trial of any admission made by an accused at a suppression hearing, the *Jones* "automatic" standing rule no longer would be necessary, especially where possession at the time of the contested search and seizure is not an essential element of the offense charged. 411 U.S. at 229.

*Jones* and *Brown* make clear that it is possession *at the time of the contested search and seizure*, possession essential to the prosecution's case, which is crucial to a determination whether a defendant is en-

titled to "automatic" standing. In the present case, the defendant was not charged with a crime in which possession *at the time of the disputed search and seizure* was an essential element of the offense. While the defendant was charged with larceny, and while asportation, which implies at least a modicum of possession, is an element of larceny, the Commonwealth's case against the defendant did not depend upon either allegation or proof that he carried away or possessed the dog in question *at the time of the disputed search and seizure.* Indeed, the defendant was charged with stealing the dog on the day preceding the search and seizure; independent evidence, both at the suppression hearing and at trial, showed his asportation and possession of the dog on that earlier date. Furthermore, at the time of the search, the defendant did not have the dog in his possession; he did not know its whereabouts. The evidence relating to the discovery and seizure of the dog, therefore, was not necessary to prove an essential element of the Commonwealth's case, but was relevant to forge a link in the chain of circumstantial evidence against the defendant.

Assuming the continued viability of the *Jones* "automatic" standing rule, we hold that the defendant does not fall within the class intended to be protected by the rule. Aside from the fact that *Simmons* protected him from any statements made at the suppression hearing, the defendant, under the circumstances of this case, cannot accuse the Commonwealth of seeking to take advantage of contradictory positions. The Commonwealth did not seek to allege possession at the time of the search as part of its charge against the defendant and then deny his possession to defeat his standing. The Commonwealth merely took the position that although the defendant had alleged a basis for standing, he did not prove his allegation.

Although his position is far from clear, the defendant appears to contend that, if he did not have "automatic" standing, he was entitled to attack the search and seizure merely by alleging, without proving, a basis for standing. What the defendant appears to contend for is "semi-automatic" standing. If that is his plea, we reject it; it finds no support in any authority.

Without "automatic" standing, the defendant, therefore, was entitled to attack the validity of the contested search and seizure only if (1) he owned or had the right to possession of the premises searched, (2) owned or had the right to possession of the property seized, or (3) was legitimately on the premises when the search occurred. *Jones v. United States, supra,* 362 U.S. at 261, 267; *Sullivan v. Common-*

*wealth,* 210 Va. 205, 208, 169 S.E.2d 580, 582 (1969). Furthermore, to gain standing, the defendant was subject to the requirements enunciated in *Jones, supra,* applicable to one not entitled to "automatic" standing. Those requirements are:

> "[I]t is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy." 362 U.S. at 261.

Here, in a bill of particulars supplementing his motion to suppress, the defendant alleged that he claimed " a possessory interest in the evidence seized by the officers who conducted the warrantless search." This allegation was disputed by the Commonwealth. It was incumbent upon the defendant, therefore, to establish by evidence the truth of his allegation. At the suppression hearing, although numerous witnesses were called, the defendant himself was the only one to testify with respect to his claim of a possessory interest. On direct examination, he was asked by his counsel, "And you do claim an interest, possessory interest, in the dog?" The defendant replied, "Yes, sir, yes, sir." The subject then was dropped by the defendant's counsel.

On cross examination, the defendant was asked, "Where did you get the dog?" He replied, "I traded the dog for two Walker deer hounds." He failed, however, to produce the person with whom he claimed to have traded; he submitted no bill of sale or other evidence of the trade; and he could not recall the date on which the trade was supposed to have occurred. He claimed to deal extensively in dogs, but denied making any examination of the dog before accepting it in trade, although the hound bore identifying tatoo marks in its ears. The defendant admitted he was present and saw a coonhound at the Woods' home on the day the theft occurred, but denied that he recognized the dog when he later acquired it in the pretended trade.

From the record, including the remarks of the trial judge in denying the defendant's motion to suppress, it is obvious that the judge did not believe the defendant's testimony as to how he came into possession of the stolen dog. It is equally obvious why the judge did not believe the testimony. Even in print, the defendant's story is contradictory and inconsistent, vague and evasive, and unsatisfactory and unconvincing.

Admittedly, the defendant's testimony concerning the trade was not directly controverted; and a trier of fact may not arbitrarily or without justification discredit evidence which is uncontradicted and not inconsistent with other evidence in the case. *Spratley* v. *Commonwealth*, 154 Va. 854, 864, 152 S.E. 362, 365 (1930). But given the nature of the defendant's testimony in this case, the trial judge was not bound to accept the testimony. While we have found only one case[2] indicating that in a suppression hearing a trial judge, in determining standing, may discredit unworthy, albeit uncontradicted, testimony of an accused, we need only the authority of common sense to tell us this must be the rule, else rational administration in an important area of our system of justice would be stultified.

Accordingly, we hold that the trial court did not err in denying the defendant's motion to suppress, and we affirm the court's judgment of conviction.

*Affirmed.*

---

[2] *United States* v. *Re*, 313 F. Supp. 442, 447 (S.D.N.Y. 1970).