UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Ortiz and Causey
Argued at Fairfax, Virginia


BRADFORD T. CELLUCCI

v.        Record No. 0195-21-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE DANIEL E. ORTIZ
MAY 17, 2022


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Catherine French Zagurskie, Chief Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

Rohiniyurie Tashima, John Marshall Fellow (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


A trial court's decision to modify a sentence after a horrific crime is a weighty matter.

The decision's solemn and case-specific nature often requires an appellate court to defer to the

lower court's judgment. Yet, this Court cannot turn a blind eye to a trial court's erroneous legal

conclusions and failure to consider all relevant factors when deciding whether to modify a

sentence under Code § 19.2-303. In these rare circumstances, an appellate court must reverse for

the trial court's abuse of discretion.

Bradford T. Cellucci entered an *Alford*[2] plea to aggravated malicious wounding after he

attacked his girlfriend's ex-boyfriend, Bryan Pedroza, with a claw hammer and paralyzed

Pedroza from the chest down. The Loudoun circuit court sentenced Cellucci to life in prison and

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

a $100,000 fine. Cellucci challenges the circuit court's denial of his motion to reconsider his sentence under Code § 19.2-303. Cellucci contends the circuit court abused its discretion in determining Cellucci failed to prove any circumstances in mitigation, despite evidence demonstrating Cellucci's Autism Spectrum Disorder (ASD) diagnosis, lack of criminal history, and demonstrated ability to be rehabilitated. Further, he contends the circuit court erred by failing to address whether modifying Cellucci's sentence was compatible with the public interest because the original sentence violates the United States Constitution's Eighth Amendment and Due Process Clause. Because the circuit court abused its discretion in making the erroneous legal conclusion that Cellucci failed to prove any mitigating circumstances and in failing to consider Cellucci's mitigating circumstances evidence, we reverse the denial of the motion to reconsider.

BACKGROUND

On July 28, 2015, twenty-three-year-old Cellucci entered the Ralph Lauren Polo Outlet store in Leesburg where Pedroza worked. Cellucci believed an allegation that Pedroza raped Cellucci's girlfriend and had decided to do something about it. Cellucci walked around the store for nearly twenty minutes until the then eighteen-year-old Pedroza approached him. Cellucci told Pedroza he wanted to try on a shirt, and Pedroza escorted Cellucci to the fitting rooms. When Pedroza turned his back to Cellucci, Cellucci punctured Pedroza's neck with a claw hammer and ran from the Polo store. Pedroza instantly fell and realized he could not control his body. After Pedroza arrived at the hospital, doctors determined that his spinal cord was severed between his C5 and C7 vertebrae.

As a result of the attack, Pedroza is paralyzed from the chest down, cannot walk, and struggles to write or open and close objects because his hands are in a "constant claw state." He experiences "very intense involuntary spasms" that cause his legs to "jump, shake, and stiffen

- 2 -

up," and he suffers from nerve pain. He also needs various medicines, medical treatments, and equipment for daily life. Since the attack, Pedroza suffers from depression and anxiety. Additionally, due to his injury, Pedroza and his family faced immediate and long-term financial difficulties.

In early 2020, Cellucci entered an *Alford* plea of guilty. Approximately eight months later, Cellucci provided evidence to the circuit court at his sentencing hearing through his sentencing memorandum, the presentencing investigation report, a forensic psychological evaluation prepared by Dr. Ina D. Patton, statements from Cellucci's family, including his wife's testimony, and Cellucci's allocution.

This evidence revealed that Cellucci was diagnosed with ASD at a very young age and did not speak until he was at least five years old. As a child, he got frustrated easily and had difficulty understanding social nuances and jokes. He also attended special education classes and qualified for Individualized Educational Plans. As he grew up, Cellucci struggled with substance abuse, starting with marijuana use and eventually escalating to heroin and OxyContin use. He received treatment for substance abuse several times. Despite his struggles with addiction, he did not have a juvenile or adult criminal record.

In 2015, he began dating a woman, and she told him that Pedroza had raped her. After learning about the rape allegation, Cellucci tried to ignore it but instead fixated on and obsessed about the alleged rape. He told the woman that Pedroza should face consequences. In the months leading up to the attack, Cellucci continued to abuse drugs, and his behavior became more erratic and agitated. Several weeks before the attack, he decided to "act on this twisted fantasy" to make Pedroza pay.

Nine days after the attack, Cellucci flew to Honduras where he kept abusing various prescription drugs. When he returned to the United States about five months later, he moved in

with his now-wife, Jennifer Cellucci (Jennifer), and her family. While living with Jennifer's family, Cellucci became a Christian, started going to church, and then stopped abusing drugs. Four months later, Cellucci and Jennifer married, and their daughter was born less than a year later. Cellucci also started working and attending school part-time.

Dr. Patton interviewed Cellucci and concluded that Cellucci met the DSM-5 criteria for an ASD diagnosis based on his history, tests, and behavior during the interview. She observed that Cellucci had adopted certain behaviors "to distract from socially awkward behavior or misunderstood social cues" and that he had limited facial and emotional reactions throughout the interview. Dr. Patton also noted that Cellucci "may mask his frustration with impulsivity" to avoid dealing with his emotions and may struggle to link "his thoughts and feelings with his behavior and their consequences." Dr. Patton concluded that a combination of Cellucci's difficulty empathizing with others, substance abuse, and failure to take psychiatric medications created a "perfect storm."

After reviewing all the evidence, the circuit court imposed the statutory maximum of a life sentence and a $100,000 fine, despite the sentencing guidelines recommending a range between five years and eight months and twelve years and eight months' incarceration. The circuit court deviated up from the sentencing guidelines because it felt the guidelines insufficiently addressed the grievousness of Pedroza's injury and Cellucci's "level of planning/premeditation." The circuit court conceded that a combination of ASD and substance abuse may have played a role but decided that the ASD diagnosis "pale[d] in comparison" to the "blow to civil society."

Cellucci moved to reconsider the sentence. He pointed to his sentencing memorandum, the presentencing report, and evidence and argument at the sentencing hearing to generally argue that he presented circumstances in mitigation; however, he did not specifically identify those

- 4 -

circumstances. Further, Cellucci argued modifying his sentence was compatible with the public interest because the sentence violated his due process rights and was cruel and unusual punishment under the Eighth Amendment, partly due to his ASD.

The circuit court denied the motion to reconsider (the denial order), focusing solely on whether Cellucci's ASD was a mitigating circumstance. It reasoned Cellucci "has not presented sufficient evidence to establish . . . that he now, or at the time of the offense, suffers from ASD." Alternatively, the circuit court determined that even if Cellucci had ASD, the diagnosis did not qualify as a mitigating circumstance under *Wilson v. Commonwealth*, 54 Va. App. 631 (2009), and had no logical nexus to the offense. The circuit court characterized Cellucci's ASD evidence as a "dying ember," "vacant, wanting of substance, and only now being emphasized as a post-hearing 'hail Mary.'" It concluded that, after considering all the evidence, "as a matter of fact and law that [Cellucci] . . . failed to prove any circumstance in mitigation of his offense." Because it found no mitigating circumstances, the circuit court declined to address whether a sentence modification was compatible with the public interest.

ANALYSIS

On the motion to reconsider, the circuit court was required to review all the evidence Cellucci presented and identify any mitigating circumstances. However, the circuit court overlooked Cellucci's lack of criminal history, both before and after the crime, ability to be rehabilitated, and age as mitigating circumstances. In erroneously concluding that Cellucci proved no mitigating circumstances evidence, the circuit court also failed to consider these relevant factors that should have been given significant weight. Thus, the circuit court abused its discretion in concluding that Cellucci failed to prove any mitigating circumstances.

## I.  Standard of Review

We review a denial of a motion to reconsider a prior ruling for an abuse of discretion. *See Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013).  "A trial court '"by definition abuses its discretion when it makes an error of law."'"  *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).  Further,

> [a] court abuses its discretion:  "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

*Barrow v. Commonwealth*, 73 Va. App. 149, 153 (2021) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013)).

## II.  The Circuit Court's Mitigating Circumstances Decision

In this case, the circuit court failed to consider all of the evidence on the motion to reconsider, and thus, did not comply with the procedural requirements of Code § 19.2-303. Moreover, the circuit court made an error of law in concluding Cellucci had failed to prove mitigating circumstances and erred in failing to consider those mitigating circumstances.

A.  *Minh Duy Du v. Commonwealth, 292 Va. 555 (2016), does not apply in this case.*

At the outset, we must address the Commonwealth's contention that *Minh Duy Du v. Commonwealth*, 292 Va. 555 (2016), precludes this Court's review of Cellucci's sentence. Under *Minh Duy Du*, when a sentence does not exceed the statutory maximum, we will not overturn the sentence as an abuse of discretion, and our "review is at an end."  *Id.* at 564-65 (quoting *Dorszynski v. United States*, 418 U.S. 424, 431 (1974)).  However, this case's procedural posture obviates *Minh Duy Du's* application.  Before us is the question of whether the circuit court abused its discretion in reviewing the Code § 19.2-303 factors, a statutory procedural requirement, not the substantive question of whether the circuit court abused its

discretion by sentencing Cellucci to life plus a $100,000 fine. *Minh Duy Du's* reasonableness test would only apply in this case once we concluded the trial court complied with the Code § 19.2-303 statutory procedures. Thus, confined to the narrow question at hand, *Minh Duy Du* does not control this case's outcome.

B. *The circuit court abused its discretion regarding Cellucci's mitigating circumstances evidence.*

Under Code § 19.2-303, a trial court may modify the unserved portion of a felon's sentence any time before the felon is transferred to the Department of Corrections "if it appears compatible with the public interest and there are circumstances in mitigation of the offense."

While a fact-finder "[is] not required to give controlling effect to the mitigating evidence," it must at least consider mitigating evidence in imposing an appropriate sentence. *Murphy v. Commonwealth*, 246 Va. 136, 142 (1993) (quoting *Correll v. Commonwealth*, 232 Va. 454, 468-69 (1987)). A mitigating circumstance "has no bearing on the actual guilt or innocence of the accused but rather relates only to the degree to which punishment is appropriate." *Wilson*, 54 Va. App. at 642. In Virginia, a mitigating circumstance is "'[e]vidence of a good previous record, and extenuating circumstances tending to explain, but not excuse, the commission of' the crime." *Id.* at 641 (alteration in original) (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)). Some mitigating circumstances include: (1) the defendant's lack of significant prior criminal activity; (2) the defendant's extreme mental or emotional disturbance while committing the crime; (3) the victim's consent to or participation in the conduct; (4) the defendant's significantly impaired capacity "to appreciate the criminality of his conduct or to conform his conduct to the requirements of law"; (5) the defendant's age when he committed the crime; and

- 7 -

(6) the defendant's subaverage intellectual function. *Id.* at 641-42 (quoting Code § 19.2-264.4)[3]; *see also Murphy*, 246 Va. at 141-42 (dismissing a defendant's contentions that the trial court did not consider mitigating circumstances because the trial court listed the mitigating factors it considered).

Additionally, as a general principle, "[a] court speaks through its orders," and those orders are presumed correct unless "evidence in the record clearly establishes that the court had a different intent." *See McBride v. Commonwealth*, 24 Va. App. 30, 35-36 (1997); *Mack v. Commonwealth*, 177 Va. 921, 929 (1941) (noting that a court's order is generally presumed correct, "and he who asserts the contrary is required to overcome the presumption by record proof"). In fact, the Virginia Supreme Court has presumed that a trial court "considered the relevant factors without giving significant weight to any irrelevant improper factor" when the parties argued the relevant factors to the court. *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 430 (2012). However, a trial judge "may not arbitrarily or without justification discredit evidence which is uncontradicted and not inconsistent with other evidence in the case." *Bolden v. Commonwealth*, 263 Va. 465, 472 n.3 (2002) (quoting *Chesson v. Commonwealth*, 216 Va. 827, 832 (1976)).

> 1. The circuit court made an error of law when it concluded Cellucci presented no mitigating circumstances evidence.

Even viewing the evidence in the light most favorable to the Commonwealth,[4] Cellucci presented uncontradicted mitigating circumstances evidence at the sentencing hearing, including his sentencing memorandum, the pre-sentencing report, and argument. Prior to his arrest,

---

[3] The General Assembly repealed Code § 19.2-264.4 in 2021 when it abolished the death penalty; however, the mitigating circumstances factors remain relevant to our analysis.

[4] On appeal, "we consider the evidence presented at trial in the light most favorable to . . . the prevailing party below." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008).

Cellucci had no criminal record. Further, in the two and a half years between the attack and his arrest, Cellucci stopped abusing drugs, became involved in a church community, maintained a stable homelife, raised his daughter, worked to support his family, attended school, and did not incur further criminal charges. These changes demonstrate his ability to be rehabilitated. Moreover, Cellucci was only twenty-three when he committed the crime. Thus, Cellucci demonstrated three different circumstances in mitigation of his offense.

In denying Cellucci's motion to reconsider, the circuit court exclusively considered Cellucci's ASD as his mitigating circumstance. Although, as discussed below, we conclude that the circuit court abused its discretion in considering Cellucci's mitigating circumstances evidence, we hold that it did not abuse its discretion in finding that Cellucci failed to prove ASD as a mitigating circumstance. The circuit court considered the forensic psychological evaluation and determined that Cellucci did not have ASD at the time of the offense[5] and even if he did, his ASD did not have "a nexus" to the crime. Having considered the report, the circuit court did not abuse its discretion in concluding that Cellucci failed to prove that his ASD explained his crime.

While the circuit court considered Cellucci's ASD evidence, it then proceeded to ignore the uncontradicted mitigating circumstances evidence it had previously considered and accepted. The circuit court reiterated that at the sentencing hearing it had considered all the mitigating circumstances and noted that Cellucci failed to specify mitigating circumstances other than his ASD in his motion to reconsider. Yet, Cellucci generally referenced the sentencing hearing evidence to show mitigating circumstances, even though his brief in support of the motion to reconsider focused on his ASD diagnosis as it related to the public interest factor. In fact,

---

[5] We decline to decide whether the circuit court correctly determined that Cellucci failed to prove that he has ASD at all or at the time of the offense. Yet, the forensic psychological evaluation suggests a diagnosis from an early age and an ongoing and lifelong condition based upon its description of Cellucci's past and present symptoms.

Cellucci referred the circuit court to the very mitigating circumstances evidence the circuit court previously relied on in the sentencing hearing.

During the sentencing hearing, the circuit court stated that it factored Cellucci's thorough sentencing memorandum into its considerations, but that it gave it "the weight and the value that it should be given." Thus, applying the presumption that a trial court knew and correctly applied the law, *Stevens v. Commonwealth*, 70 Va. App. 280, 306 (2019), the circuit court found and considered at least some mitigating circumstances evidence at the sentencing hearing. However, on the motion to reconsider, the circuit court did not incorporate its prior sentencing ruling or order into the denial order and instead explained that it came to its conclusion "[f]or the reasons set forth below." It then concluded "as a matter of fact and law" that Cellucci did not prove any mitigating circumstances. If the circuit court could not identify the specific mitigating circumstances Cellucci's motion referred to, it could have scheduled a hearing to properly address the motion before it.

Therefore, and because it decided not to hear the motion, the only evidence in the record about the circuit court's intent on the motion to reconsider is the circuit court's denial order. Evidently, between the sentencing hearing and the motion to reconsider, the circuit court changed its decision about whether Cellucci had demonstrated mitigating circumstances evidence. The circuit court further demonstrated that it changed its decision about whether Cellucci proved any mitigating circumstances by declining to consider the public interest factor under Code § 19.2-303. By doing so, the circuit court confirmed that it found absolutely no circumstances in mitigation, not solely that Cellucci's ASD diagnosis was not a mitigating circumstance.[6]

---

[6] We agree with the dissent that we must both presume a trial judge knew and correctly applied the law and infer a trial court's findings based on its rulings. *Stevens*, 70 Va. App. at 306

In short, the circuit court could not arbitrarily discredit uncontradicted evidence of Cellucci's lack of criminal history, age, and ability to be rehabilitated. Though *Wilson*, 54 Va. App. at 641-42, only specifically includes lack of criminal history and age as mitigating circumstances, trial courts should consider a defendant's ability to be rehabilitated. Consequently, the circuit court made a clear error of law when it found as a matter of law that these two circumstances were not mitigating.

     2. The circuit court abused its discretion when it failed to consider Cellucci's mitigating circumstances evidence.

Moreover, although we would normally presume that the circuit court correctly weighed the Code § 19.2-303 factors, *see Mack*, 177 Va. at 929, the circuit explicitly demonstrated that it did not consider Cellucci's lack of criminal history, age, and ability to be rehabilitated. As

---

(quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). Moreover, we also concur that we must review an order within its entire context. *Id.* (quoting *Yarborough*, 217 Va. at 978). Where we differ from the dissent is in how we apply these principles to this case. In spite of the requisite presumptions and inferences given to a trial court's order, a trial judge cannot retain the benefit of the presumption that it considered certain factors while explicitly rejecting those same factors. The only language in the circuit court's order that the dissent can rely on to conclude that the circuit court considered all the mitigating circumstances is its general statement that it considered all of the evidence Cellucci provided. In reviewing a trial court's order, this language would generally be sufficient, and a trial court would benefit from our usual presumption. However, the circuit court's express language and the order's context sufficiently contradict the presumption.

     First, the circuit court expressly held that Cellucci "failed to prove *any* circumstance in mitigation." (Emphasis added). "Any" is an unrestrictive modifier and "is generally considered to apply without limitation." *Sussex Cmty. Servs. Ass'n v. Va. Soc'y for Mentally Retarded Children, Inc.*, 251 Va. 240, 243 (1996). We cannot restrict the word "any" to mean only evidence relating to Cellucci's ASD. To do so would render the word "any" meaningless. Further, the order's context shows that the circuit court only considered the ASD and not any other mitigating circumstances. Unlike in its sentencing decision, where the circuit court considered aggravating factors when it deviated up from the guidelines, Code § 19.2-303 did not direct the circuit court to weigh the mitigating circumstances against the crime and any aggravating circumstances. Instead, Code § 19.2-303 instructs courts to look at whether mitigating circumstances exist and whether a modification would be compatible with the public interest. If, as the dissent suggests, the circuit court found and considered the three mitigating circumstances Cellucci presented, it would have had to review the public interest factor as required by Code § 19.2-303. By failing to do so, the circuit court provided contextual clues that it found no mitigating circumstances.

- 11 -

discussed above, because the circuit court found as a matter of law and fact that Cellucci presented no mitigating circumstances evidence, it undoubtedly did not consider and weigh the relevant factors. Notably, "[t]here is no general requirement that trial courts must state for the record the reasons underlying their decisions." *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015).[7] Yet, the circuit court explained its reasoning, revealing its error of law and failure to consider the relevant factors. As a result, the circuit court showed that it erred not only in its legal findings but also in its failure to consider the relevant factors "that should have been given significant weight." *Barrow*, 73 Va. App. at 153.

Overall, the circuit court abused its discretion by making an error of law that Cellucci did not prove any mitigating circumstances. Accordingly, it also abused its discretion by failing to consider and weigh Cellucci's mitigating circumstances, including his lack of criminal history, age, and substantial capacity for rehabilitation. Lastly, we decline to address the public interest factor. As a result, we reverse and remand for the circuit court to review and consider Cellucci's mitigating circumstances evidence and the public interest factor.[8]

---

[7] While a trial court need not always explain its reasoning for a particular ruling, a detailed ruling assists appellate courts in reviewing whether a trial court properly analyzed an issue.

[8] In this type of case, the best practice would be to remand the motion to reconsider the sentencing modification decision to a different judge. The rationale behind remanding to a different judge takes root in the deeply personal nature of sentencing and the concerns about the appearance of fairness. Criminal sentencing "involves a complex interplay of factfinding, prediction, and moral judgment culminating in the awesome responsibility of deciding exactly how long another human being will be deprived of his liberty." Toby J. Heytens, *Reassignment*, 66 Stan. L. Rev. 1, 49 (2014). In fact, "[c]riminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. Thus, the nature and requirements of resentencing can make it "particularly difficult . . . to reconsider one's own previous decisions." Heytens, *supra*, at 49. Moreover, some courts may reassign a case to avoid even a slight appearance of impropriety or unfairness. *Id.* at 49 n.234 (citing *United States v. Figueroa*, 622 F.3d 739, 745 (7th Cir. 2010) (Evans, J., concurring) (concurring with reassignment because the defendant "[wa]s entitled, procedurally, to a cleaner hearing than the one he got" after the trial judge made "extraneous and inflammatory comments")). It also

We do not undermine the seriousness of Cellucci's crime.  Yet, in reviewing Cellucci's motion to reconsider, the circuit court erroneously concluded no mitigating circumstances existed and consequently failed to consider all mitigating circumstances evidence.  Thus, we hold the circuit court abused its discretion in finding that Cellucci presented no mitigating circumstances evidence and in failing to consider Cellucci's lack of criminal history, ability to be rehabilitated, and age.  Therefore, we reverse and remand.

*Reversed and remanded*.

---

alleviates pressure on the circuit court because it cannot be accused of either "stubbornly adhering to [its] original position" or "simply cav[ing] to appellate pressure." *Id.* at 31.

This approach aligns with the Fourth Circuit's approach to reassigning cases on remand. The Fourth Circuit looks to whether the (1) original judge can put aside his "previously expressed views or findings determined to be erroneous or based on evidence that must be rejected," (2) reassignment will "preserve the appearance of justice," and (3) reassignment would cause disproportionate waste and duplication to any value in maintaining an appearance of fairness. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728-29 (4th Cir. 2021).

Because of the circuit court's necessary involvement with this case's facts, it may have difficulty reconsidering its own decision that no mitigating circumstances existed, despite the clear record in this case.  Therefore, the circuit court should consider reassigning the case to a different judge.

Decker, C.J., dissenting.

The majority concludes that the trial court erroneously found that the appellant proved no circumstances in mitigation of his crime and as such abused its discretion. I disagree with this interpretation of the order denying the motion to reconsider under Code § 19.2-303, and therefore I respectfully dissent.[9]

Code § 19.2-303 permits a court to modify the sentence of a convicted felon who has not yet been transferred to the Department of Corrections if "there are circumstances in mitigation of the offense" and modification "appears compatible with the public interest." The burden to prove these elements falls on the defendant. *Harris v. Commonwealth*, 57 Va. App. 205, 212 (2010). The trial court's decision is reviewed for an abuse of discretion. *See Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013). A court abuses its discretion by failing to consider a significant relevant factor, giving significant weight to an irrelevant or improper factor, committing a clear error of judgment, or making a mistake of law. *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564-65 (2016); *Barrow v. Commonwealth*, 73 Va. App. 149, 153 (2021).

In his motion to reconsider his sentence, the appellant argued that "there are circumstances in mitigation of the offense." He specifically references his "Sentencing Memorandum, the pre-sentencing report, and evidence and argument at [his] sentencing

---

[9] In addition, I disagree with the majority's inclusion of footnote eight suggesting that the trial court reassign the case on remand. This Court does not comment on a judicial circuit's administrative handling of a case unless we are called on to review such a decision as a matter of law. *See Ferrara v. Commonwealth*, 299 Va. 438, 447 (2021) (recognizing the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962))), *cert. denied*, 142 S. Ct. 814 (2022); *Yarbrough v. Commonwealth*, 258 Va. 347, 361 (1999) (noting a trial court's inherent authority to administer cases on its docket). We were not asked to do so here and should not provide an advisory opinion.

hearing." In support of his motion, the appellant filed a brief contending that his sentence violated the Eighth Amendment and Due Process Clause of the federal and state constitutions.

When denying the motion to reconsider the appellant's sentence, the trial court issued a detailed eight-page order. In that lengthy order, it expressly considered the appellant's sentencing memorandum, the presentence investigation report, the evidence, the argument presented at sentencing, the appellant's motion for reconsideration, and his brief in support of that motion. The court noted that the motion neglected to specify the mitigating circumstances that the appellant believed supported *reconsideration* of his sentence. However, it inferred, based on the appellant's brief, that his argument was that "the dispositive circumstance in mitigation of his offense" was his ASD diagnosis. Also, the trial court found that the appellant's evidence that he had ASD "had minimal probative value." In fact, the court found that the appellant did not prove that he had ASD at the time of the offense. The trial court order noted that upon consideration of the case, the court found "as a matter of fact and law that the defendant . . . *failed to prove* any circumstance in mitigation of his offense." (Emphasis added).

In reading the order as a whole in light of the applicable standard of review, I conclude that it does not compel a finding that the court disregarded the other evidence highlighted by the appellant as mitigating. It is true that the trial court's single statement that the appellant "failed to prove any circumstance in mitigation of his offense," without more, might be viewed as implying that it neglected to consider the undisputed evidence of his age, his lack of prior criminal convictions, and his argument that he had shown his ability to be rehabilitated.[10] *See generally Wilson v. Commonwealth*, 54 Va. App. 631, 641-42 (2009) (explaining that the defendant's age and absence of a previous criminal record may constitute evidence of mitigating

---

[10] To support his argument that he is amenable to rehabilitation, the appellant points to the almost three years that passed between his flight following the offense and his indictment, noting that during that time he became a productive member of society.

circumstances as contemplated by Code § 19.2-303). However, an appellate court must avoid "fix[ing] upon isolated statements of the trial judge taken out of the full context in which they were made[] and us[ing] them as a predicate for holding the law has been misapplied." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 n.11 (2018) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)) (applying this principle in the context of reviewing a letter opinion); *see also Duggins v. Commonwealth*, 59 Va. App. 785, 789 n.2 (2012) (citing the principle that this Court presumes that trial courts know and correctly apply the law). Although a court speaks through its written orders, *Roe v. Commonwealth*, 271 Va. 453, 457 (2006), a reviewing court should read those orders in context, *Coward*, 295 Va. at 363 n.11.

In ruling on the motion to reconsider under Code § 19.2-303, the trial court expressly stated that it considered the presentence report and the arguments at sentencing, which addressed the appellant's age and lack of criminal convictions, as well as his assertion that he had been rehabilitated. The appellant argues on appeal that his evidence of these factors proved mitigating circumstances. Mitigating circumstances "tend to lessen an accused's moral culpability for the crime committed." *Wilson*, 54 Va. App. at 642. Whether a certain fact, such as a defendant's youth, tends to lessen his moral culpability depends on the particular circumstances of each case. Here, I do not believe that in making this discretionary determination, the trial court was obligated to find that the evidence highlighted by the appellant mitigated his crime. Viewing the order in its entirety and under the proper standard, I conclude that the trial court appropriately considered the evidence of mitigating circumstances pursuant to Code § 19.2-303 and simply weighed that evidence as it saw fit.[11] *See generally Henderson v. Commonwealth*, 285 Va. 318, 326 (2013) (inferring a trial court's finding based on its ruling); *Groves v. Commonwealth*, 50

___

[11] Once the trial court found that the appellant had failed to prove any circumstances in mitigation of his offense, it did not need to address the second statutory requirement concerning the public interest. *See* Code § 19.2-303.

Va. App. 57, 61-62 (2007) (noting that a "judge is presumed to know the law and to apply it correctly in each case" (quoting *Crest v. Commonwealth*, 40 Va. App. 165, 172 n.3 (2003))).

Having rejected the majority's premise that the trial court concluded that the appellant failed to present any mitigating evidence at all, I also conclude that the court did not abuse its discretion as a matter of law by denying the motion to reconsider the appellant's sentence.

The Supreme Court of Virginia has made clear that "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du*, 292 Va. at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). This concept is not new. In fact, it is well established in Virginia law.[12] The appellant's sentence was within the permissible statutory range.[13] *See* Code §§ 18.2-10(b), -51.2(A). Consequently, I do not believe that the trial court abused its discretion in denying the appellant's motion to reconsider his sentence. *See Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013) ("[W]hen a decision is discretionary . . . the court

_____

[12] In *Minh Duy Du*, 292 Va. at 562, the defendant appealed after the trial court imposed his sentence and denied his motion to reconsider filed in compliance with Rule 1:1. I conclude that the holding in *Minh Duy Du* applies to our review in this case. As noted, I disagree that the record indicates that the court failed to consider evidence of mitigating circumstances. The majority concludes that *Minh Duy Du* does not apply to the preliminary question of whether the court considered the requisite factors under the statute. However, it concedes that *Minh Duy Du* applies generally to a review of a trial court's substantive ruling on a motion under Code § 19.2-303 for a sentence modification after the period in Rule 1:1 has expired.

I recognize that the appellant argues that *Minh Duy Du* and the related decision in *Alston v. Commonwealth*, 274 Va. 759 (2007), should not prevent substantive review of his sentence. He suggests that these cases erroneously interpret *Abdo v. Commonwealth*, 218 Va. 473 (1977). However, even if this Court disagreed with Supreme Court precedent, we are not in a position to overrule either *Minh Duy Du* or *Alston*. We are "bound by decisions of the Supreme Court of Virginia." *Vay v. Commonwealth*, 67 Va. App. 236, 258 n.6 (2017).

[13] In fact, the appellant has already challenged his sentence in a direct appeal. This Court denied his petition on the ground that the sentence was within the statutory range. *Cellucci v. Commonwealth*, No. 1088-20-4 (Va. Ct. App. Apr. 9, 2021). While that appeal was pending, the appellant filed the instant motion under Code § 19.2-303 in the trial court.

has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." (second and third alterations in original)).

Even if I were to accept the proposition that this principle does not apply here to preclude substantive review of the order denying the motion to reconsider the appellant's sentence, I would still conclude that this case requires affirmance. The appellant argues that the trial court erred by finding that he failed to prove that he had ASD at the time of the offense and concluding that he established no nexus between his purported ASD and his crime. He essentially contends that the evidence *compelled* the findings that he had ASD and that it "explain[ed]" his offense.

This is not the law in Virginia, and the facts belie this conclusion. "Criminal sentencing decisions . . . rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Min Duy Du*, 292 Va. at 563; *see also* Code § 19.2-303 (permitting "the court that heard the case" to consider the defendant's motion to modify the unserved portion of his sentence). The standard of review for the trial court's factual findings is whether they were plainly wrong or without evidence to support them. *See Vandyke v. Commonwealth*, 71 Va. App. 723, 729 (2020). The question for an appellate court is not whether it would have made the same findings.

The clinician who prepared the psychological evaluation in evidence opined that the appellant "meets [the] criteria for a diagnosis of" ASD. Nonetheless, the trial court, considering the entire report, found that the appellant did not prove that he had ASD at the time of the offense.[14] The court also concluded, in the alternative, that the opinion expressed in the report

_____

[14] The court noted that "the only manifestation" that the "psychological evaluator observed of ostensible ASD was that the defendant would smile and nod along while she spoke even though he did not fully comprehend what she was saying." After considering the report, the court opined that it was "unsurprising that the evaluator could only diagnose the [appellant] with

that the appellant's ASD "*may* have played" a "role . . . lead[ing] to the offense" did not prove that his purported condition explained his crime. (Emphasis added). These factual findings are not plainly wrong or without evidence to support them. Consequently, the court was under no obligation to make the factual findings proposed by the appellant and did not abuse its discretion by declining to do so.

I believe that the record, viewed under the proper standard, establishes that the trial court considered the evidence of mitigating circumstances as required by Code § 19.2-303. Further, regardless of how I might have viewed the evidence if sitting as the factfinder, I conclude that the record supports the trial court's factual findings that the appellant did not establish that he had ASD at the time of the offense or that the condition explained his crime. For these reasons, I would hold that the trial court did not abuse its discretion and accordingly would affirm the decision.

---

ASD 'by history' rather than 'currently.'" The court further noted that the ASD diagnosis was "undermin[ed]" by the clinician's observation that he made appropriate eye contact and "engaged in reciprocal communication that was cooperative," behaviors "inconsistent with her own description of an autistic individual."